The PEOPLE of the State of Colorado, Plaintiff–Appellee, Cross–Appellant,

v.

Geoffrey Christopher SMITH, Defendant–Appellant, Cross–Appellee.

No. 86SA274.

Supreme Court of Colorado, En Banc.

May 16, 1988.

Rehearing Denied June 6, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Cynthia A. Savage, Curt Kriksciun, Asst. Attys. Gen., Denver, for plaintiff-appellee, cross-appellant.

Richard Y. Neiley, Jr., P.C., Richard Y. Neiley, Jr., Aspen, for defendant-appellant, cross-appellee.

ROVIRA, Justice.

Defendant Geoffrey Christopher Smith was convicted of criminal mischief, § 18–4–501, 8B C.R.S. (1986). The trial court sentenced him to a term of imprisonment and a fine, suspended that sentence, then placed him on probation. Smith contends that the trial court erred in refusing to give the self-defense instruction he tendered, and the People claim that the trial court erred in declining to order that Smith pay restitution.[1] Although we find no error in the trial court's refusal to give the self-defense instruction, we agree with the People that the trial court should have ordered the defendant to pay restitution as a condition of probation. In addition, our review of the record indicates that a portion of the sentence imposed was an illegal sentence. We therefore affirm the judgment of conviction and remand the case for resentencing.

I.

Kendall Williams and the defendant were acquainted for over fourteen years at the time of this offense. Williams was a realtor, and during the spring of 1985—at

---

1. The People appeal the trial court's denial of restitution pursuant to section 16–12–102(1), 8A C.R.S. (1986), and C.A.R. 4(b)(2). The defendant initially filed his appeal in the court of appeals. Upon motion by the People and a request for determination of jurisdiction by the court of appeals, § 13–4–110(1)(a), 6A C.R.S. (1987), we transferred jurisdiction over the defendant's appeal to this court and consolidated the People's and defendant's appeals pursuant to C.A.R. 3(c).

Smith's request—he spent several days discussing property around Aspen with Dr. James Mayoza, a friend of Smith's.

In early August 1985, Williams learned that another realtor had shown ranch property to Dr. Mayoza. Williams was angered by what he perceived as Smith's "dealing behind his back," and on the morning of August 9, 1985, he drove to Smith's house to confront Mayoza and Smith. When Williams knocked on the door Smith arose from his bed, motioned Williams to enter the house, and returned to bed. Williams asked to see Mayoza, but Smith informed him that Mayoza was sleeping and that Williams should not disturb him.

Williams then questioned Smith regarding the other realtor's having shown Mayoza property. After a short discussion Williams, by his own account, "lost control" of himself and attacked Smith. He hit Smith several times in the face, and during the assault inflicted a deep cut above Smith's eye. When Smith first tried to get up to defend himself, Williams pushed him back down on the bed.

Mayoza testified that he was awakened when Williams knocked on the door, but he remained in bed until he heard the fight in the other room. He got up to investigate the disturbance and upon entering the living room saw Williams hitting Smith "like a nail hitting a hammer [sic]." Shortly thereafter, Williams let Smith up and Smith ran into an equipment room in the house.

Smith emerged from the equipment room brandishing a rifle. When Mayoza attempted to restrain him, Smith broke away and ran outside. Smith fired three shots at Williams' car, then relinquished the rifle to Mayoza, who had followed him outside. Smith then returned to his living room where he and Williams began arguing, and Williams again assaulted Smith.

Mayoza and two men in the area eventually managed to break up the fight. Williams subsequently pleaded guilty to third-degree assault, and Smith was tried and convicted on the charge of criminal mischief. The trial court sentenced Smith to a two-year term of imprisonment and a $2,000 fine, then suspended both and sentenced Smith to a two-year term of unsupervised probation.

## II.

■ The defendant argues that the trial court erred in refusing to instruct the jury on the affirmative defense of self-defense. We disagree.

Smith contended at trial that he shot Williams' car so as to avert any further assault by Williams, and he tendered to the court a jury instruction setting out the statutory defense of self-defense:[2]

*Use of physical force in defense of a person.* (1) [A] person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

§ 18–1–704, 8B C.R.S. (1986). The trial court refused to give the self-defense instruction.

The law is well-settled that "an instruction embodying the defendant's theory of the case must be given if there is any evidence in the record to support it." *People v. Dillon,* 655 P.2d 841, 845 (Colo.1982). *See also People v. Thompson,* 197 Colo. 299, 592 P.2d 803 (1979); *People v. Rivera,* 186 Colo. 24, 525 P.2d 431 (1974).

Smith testified that during the course of the initial assault he had "a great sense at one point of basic self-preservation" and that he grabbed his rifle with "this big instinct of self-defense going." He offered no explanation, however, of why, after arming himself and leaving the scene of the assault, he shot Williams' car. Instead,

**2.** The instruction Smith tendered generally restated the language found in the statute, but omitted the words "upon another person." The People contend that inasmuch as Smith's shooting of Williams' car did not constitute the use of physical force "upon another person," he was precluded from asserting self-defense as a matter of law. In light of our resolution of Smith's contention on another basis, we need not address the People's argument.

he testified only that "I just ran out of the house, [Williams' car] was the first thing I saw, pointed the gun at it ... and I just went boom, boom, boom." He further testified that he knew neither what he was doing when he shot Williams' car nor why he shot Williams' car.

None of the remaining evidence in the trial suggested that Smith was acting in self-defense when he shot Williams' car. In fact, a few hours after the incident Smith explained to the investigating officer, Pitkin County Deputy Sheriff Michael Keeffe, that he shot Williams' car as an angry response to the beating he had just taken at Williams' hands. He also told Keeffe that he deliberately aimed at the motor so as to disable Williams' car.

The jury could have chosen, of course, to discount Smith's statement to Keeffe that he shot Williams' car to exact retribution from Williams. Nonetheless, the jury could not reasonably have inferred from the evidence presented either that Smith fired his rifle at Williams' car with the intent of defending himself or that Smith believed—much less reasonably so—that his shooting Williams' car was necessary to defend himself. Inasmuch as the evidence was insufficient to support a finding of self-defense, the trial court did not err in refusing to deliver the self-defense instruction Smith tendered.

Accordingly, the judgment of conviction is affirmed.

### III.

▮▮▮ The trial court sentenced Smith to two years' imprisonment and a $2,000 fine, then suspended both the prison term and the fine and sentenced Smith to a two-year term of unsupervised probation. Over the objection of the prosecutor, the trial court declined to order Smith to pay restitution to Williams and his insurer for the damage to Williams' car. The People contend that the trial court erred in not requiring Smith to pay restitution. We agree.

The statute authorizing probation provides, in part,

The conditions of probation shall be such as the court in its discretion deems rea-

sonably necessary to insure that the defendant will lead a law-abiding life and to assist him to do so. *The court shall provide as explicit conditions of every sentence to probation* that the defendant not commit another offense during the period for which the sentence remains subject to revocation and *that the defendant make restitution pursuant to section 16–11–204.5.*

§ 16–11–204(1), 8A C.R.S. (1986) (emphasis added). Prior to 1977, the statute did not state that restitution "shall" be a condition of probation, but instead stated that "[w]hen granting probation, the court may, as a condition of probation, require that the defendant: ... (e) [m]ake restitution or reparation, or both, to the victim of his conduct...." § 16–11–204(2), 8 C.R.S. (1973). In 1977, however, the legislature amended section 16–11–204(1) as stated above, deleted restitution as a discretionary condition of probation, and added the following section:

*Restitution as a condition of probation.* (1) As a condition of every sentence to probation, the court shall provide that the defendant make restitution to the victim of his conduct or to a member of the victim's immediate family for the actual damages which were sustained. Such restitution shall be ordered by the court as a condition of probation. The amount of such restitution shall be based on the actual, pecuniary damages sustained by the victim, the ability of the defendant to pay, and the defendant's obligations to support his dependents and to meet other family obligations. The court shall fix the manner and time of performance.

§ 16–11–204.5, 8A C.R.S. (1986). *See* Ch. 216, sec. 5, § 16–11–204(1) & –204(2)(e), 1977 Colo.Sess.Laws 861, 863; Ch. 216, sec. 6, § 16–11–204.5, 1977 Colo.Sess.Laws 861, 863–64.

At the sentencing hearing, the People asked the trial court "to impose as a condition of probation under 16–11–204.5, $2,629 to the insurance company, and $100 to the victim, which was a deductible on [the in-

surance policy]."[3] The trial court declined that request, explaining that

> Ordinarily, this Court subscribes to requiring restitution in criminal cases. But under the particular circumstances of this case, and taking into account that it's represented to me by counsel that the damage [to the car] along with the other damage is the subject of a civil complaint and counterclaim between the defendant here and Mr. Williams, it seems to the Court that it would be more appropriate that [the question of] restitution be resolved in that civil case.

We find that the mere pendency of a civil suit between a criminal and his victim cannot act to vitiate the trial court's duty to order restitution to the victim. The language of the statute does not leave the question of restitution in the discretion of the trial court, but instead unequivocally requires that "restitution shall be ordered by the court as a condition of probation."

Although restitution is limited by a defendant's ability to pay and by his financial obligations to his family, restitution may prove to be the victim's most immediate source of compensation for the loss he has suffered. Permitting a court to decline to impose restitution as a condition of probation in light of a collateral civil suit would place victims in the unfair position of having to decide whether to postpone a civil suit solely to ensure that they do not lose their statutorily granted right to restitution. A victim should not be penalized for initiating a civil suit to seek more complete relief from the one who caused his loss.[4]

The judgment of conviction establishes that Smith was responsible for damaging Williams' car. The law does not contemplate that Smith may postpone answering for that loss, nor does it contemplate that Williams' insurer should be required to resort to a civil suit to recover the loss it suffered as a direct result of Smith's conduct.

Because the trial court did not order restitution as a condition of probation, it did not determine the actual pecuniary losses that Williams and his insurer suffered. We therefore must remand the case for further proceedings so the trial court may determine the amount of restitution in light of the factors set out in section 16–11–204.-5(1).

▪ We also note that the trial court sentenced Smith to a term of imprisonment of two years and a $2,000 fine. It then suspended both and sentenced defendant to a two-year term of unsupervised probation. As we explained in *People v. Flenniken*, 749 P.2d 395 (Colo.1988), the sentencing statutes do not authorize a court to suspend a sentence to imprisonment. In light

---

**3.** In *People v. King*, 648 P.2d 173 (Colo.App. 1982), the court of appeals held that

> We ... construe the term "victim" as it appears in § 16–11–204.5, C.R.S. 1973 (1981 Cum.Supp.), to refer to the party immediately and directly aggrieved by the criminal act, and not to others who suffer loss because of some relationship, contractual or otherwise, to the directly aggrieved party.

648 P.2d at 174. As a consequence, the court held, a victim's insurer is not itself a "victim" as used in section 16–11–204.5. The General Assembly later added the following definition to section 16–11–204.5:

> (4) "Victim", as used in this section, means the party immediately and directly aggrieved by a defendant who is convicted of a criminal act and who is granted probation, *as well as others who have suffered losses because of a contractual relationship with such party* or because of liability under section 14–6–110, C.R.S. If there is more than one victim, the party immediately and directly aggrieved shall first be compensated for his loss.

§ 16–11–204.5(4), 8A C.R.S. (1986) (emphasis added). *See* Ch. 140, sec. 1, § 16–11–204.5, 1985 Colo.Sess.Laws 630, 630. The legislature's intent to abrogate the rule announced in *King* is unmistakable, and it is therefore clear that under the present law an insurer who reimburses the immediate victim of a crime for his losses is a "victim" within the meaning of section 16–11–204.5.

**4.** The defendant also cites in support of the trial court's order a statement Williams allegedly made to the effect that he did not desire restitution. The trial court did not rely on that statement in justifying its decision, however, and we therefore decline to consider whether Williams waived his right to restitution. Moreover, there is no evidence in the record to suggest that Williams' insurer waived its right to restitution, nor is there any evidence that the insurer was a party to the civil suit at the time the trial court sentenced Smith.

**1172**

of the clear intent of the trial court to impose a term of probation and the prosecution's acknowledgment that probation is appropriate in this case, we vacate the sentence to imprisonment.

The judgment of conviction is affirmed. The sentence to imprisonment is vacated, the sentence to probation is affirmed, and the case is remanded for further proceedings in accordance with this opinion.