The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 23, 2018

## 2018COA123

### No. 16CA2226, People v. Barbre — Criminal Law — Sentencing — Restitution

In this criminal restitution case, a division of the court of appeals resolves the dispute between the parties about what standard of review to apply. This appeal involves the issue of whether the prosecution sufficiently proved at the restitution hearing the amount of the victim's loss proximately caused by the defendant's conduct. The division concludes that the appropriate standard of review in this case is whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is sufficient to support the district court's ruling that the prosecution proved by a preponderance of the evidence that the defendant caused $10,553.80 in loss to the

victim. Applying that standard of review, the division concludes that the evidence was sufficient to affirm the restitution order.

In resolving these issues, the division also analyzes the historical use of the abuse of discretion standard in criminal restitution appeals, and explains why that standard of review should not be applied as broadly as it has in the past.

COLORADO COURT OF APPEALS                                    **2018COA123**

Court of Appeals No. 16CA2226
Arapahoe County District Court No. 15CR3360
Honorable Patricia D. Herron, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kress Nicole Barbre,

Defendant-Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE DAVIDSON*
Loeb, C.J., and Vogt*, J., concur

Announced August 23, 2018

Cynthia H. Coffman, Attorney General, Ellen M. Neel, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, David A. Kaplan, Deputy State
Public Defender, Centennial, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1     Defendant, Kress Nicole Barbre, appeals the district court's order awarding $10,553.80 in restitution to the victim pharmacy (the pharmacy). She contends that the prosecution did not sufficiently prove she caused that amount of loss. We disagree with defendant and affirm the district court's decision. In doing so, we clarify that the appropriate de novo standard of review for the issue presented here is whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is sufficient to support the district court's ruling that the prosecution proved by a preponderance of the evidence that defendant caused the amount of restitution awarded.

## I. Background

¶ 2     While working at the pharmacy, defendant stole several types of prescription pain medication. She pleaded guilty to one count of theft and one count of possession of a controlled substance occurring over a nearly yearlong period. The district court sentenced her to two years of probation.

¶ 3     At the restitution hearing, an asset protection manager for the pharmacy testified regarding his investigation of the thefts. The

pharmacy's automated system for tracking inventory was showing "negative adjustments," in other words, missing pills. Over a seventeen-day period, the asset protection manager worked with the pharmacy manager to conduct daily counts of pills to determine the days on which pills were going missing.

¶ 4 The particular days that pills went missing during that seventeen-day period were the same days that defendant worked in the pharmacy. The asset protection manager reviewed surveillance videos from those days and observed defendant stealing medication.

¶ 5 The asset protection manager then confronted defendant with that evidence. Defendant admitted that she had been stealing medications and identified the particular types of medications she had been stealing. She also admitted that she had been stealing the medications for "a little over a year," and that the number of pills she had stolen was "in the thousands."

¶ 6 The asset protection manager then ran a report from the automated system reflecting the negative adjustments over the previous year for the types of medications that defendant had admitted to stealing. The asset protection manager created a spreadsheet listing each type of medication, the quantity of stolen

pills for each type, the wholesale price for each type of pill, and the total wholesale price for the entire quantity of stolen pills. That spreadsheet described by the asset protection manager during the restitution hearing appears to be the same spreadsheet submitted in the victim impact statement. According to the testimony at the restitution hearing and the spreadsheet submitted in the victim impact statement, the total wholesale price of those pills was $10,553.80. The total number of stolen pills listed in the victim impact statement spreadsheet was 5730.

¶ 7 During closing argument at the restitution hearing, defendant argued that the court should not order restitution for the entire one-year period, but instead should order restitution based only on the pills stolen during the seventeen-day period.

¶ 8 The district court ultimately concluded that the prosecution had met its burden of proving that defendant had caused $10,553.80 in loss to the pharmacy. The court specifically relied on defendant's admission that she had stolen thousands of pills over a one-year period, and on the reliability of the pharmacy's automated system for tracking inventory.

## II. Waiver

¶ 9 As an initial matter, we disagree with the People's contention that defendant waived her current challenge to the restitution order because of a provision in the plea agreement. The provision at issue stated that restitution was "reserved, admit causation." At the providency hearing, the district court confirmed with defendant that she was "admitt[ing] restitution as to causation, but an amount would be reserved to a later date."

¶ 10 We note that the provision in the plea agreement is ambiguous, and could be read to mean defendant was admitting she caused *any* amount of loss the prosecution might later seek at the restitution hearing. Notably, defendant pleaded guilty to theft of items valued at $750 or more *but less than $2000. See* § 18-4-401(1)(a), (2)(e), C.R.S. 2017. Later, the prosecution sought $10,553.80 in restitution.

¶ 11 But defendant admitted that she caused certain losses but not others, and, therefore, the issue of causation cannot be divorced from the amount of loss awarded in restitution. Thus, on this record, we disagree with the People's suggestion that the provision

in the plea agreement meant that defendant was stipulating to having caused $10,553.80 in loss to the pharmacy.

## III. Preservation

¶ 12    We also disagree with the People's argument that defendant did not preserve her appellate contention in the district court. In so arguing, the People cast defendant's "causation argument" as distinct from her "challenge to the amount of restitution." Again, in a case like this, the issue of causation is inextricably intertwined with the issue of the proper amount of restitution. Thus, we construe defendant's contention on appeal as being the same argument she made in the district court — namely, that the prosecution did not sufficiently prove that she caused $10,553.80 in loss to the pharmacy.

## IV. Standard of Review

¶ 13    In terms of the appropriate standard of review, defendant argues that we should conduct a de novo sufficiency of the evidence review. *See People v. Ortiz*, 2016 COA 58, ¶ 26 ("[The] defendant challenges the sufficiency of the evidence [supporting the restitution order]. We review sufficiency challenges de novo, determining

whether the evidence is sufficient in both quality and quantity to satisfy the applicable burden of proof.").

¶ 14 The People disagree and contend that we should review for an abuse of discretion. In doing so, they rely on two of the numerous Colorado Court of Appeals cases stating that district courts have broad discretion in determining the appropriate terms and conditions of restitution. Indeed, many other Colorado Court of Appeals cases, for decades and to date, state generically that restitution orders are reviewed for an abuse of discretion. *See, e.g.*, *People v. Henry*, 2018 COA 48M, ¶ 12; *People v. Quinonez*, 701 P.2d 74, 75 (Colo. App. 1984), *aff'd in part and rev'd in part on other grounds*, 735 P.2d 159 (Colo. 1987). However, the People do not cite, nor could we find, a Colorado Supreme Court opinion making that same general statement that criminal restitution orders are reviewed for an abuse of discretion.

¶ 15 Based on our research, we conclude that the district court's determination in this case that defendant owed $10,553.80 in restitution was not a discretionary ruling subject to an abuse of discretion review. In reaching this conclusion, and because case law supports both defendant's and the People's positions, it is

instructive to review the statutory evolution of criminal restitution determinations in Colorado.

¶ 16    For decades before 1977, a district court's decision whether to order restitution as part of a probationary sentence was entirely discretionary. *See* § 16-11-204(2)(e), C.R.S. 1973 (A court "may" require that the defendant make restitution.); § 39-16-7, C.R.S. 1963 (same); § 39-16-7, C.R.S. 1953 (same).

¶ 17    In 1977, the General Assembly amended the restitution statute to *require* restitution as part of a probationary sentence. *See* Ch. 216, secs. 5-6, §§ 16-11-204(1), -204.5(1), 1977 Colo. Sess. Laws 863-64. In *People v. Smith*, 754 P.2d 1168 (Colo. 1988), the supreme court discussed that statutory amendment and concluded that the new statutory language "does not leave the question of restitution in the discretion of the trial court, but instead unequivocally requires that 'restitution shall be ordered by the court as a condition of probation.'" *Id.* at 1171 (quoting § 16-11-204.5(1)); *see also Cumhuriyet v. People*, 200 Colo. 466, 468-69 & n.2, 615 P.2d 724, 725-26 & n.2 (1980) (interpreting the pre-1977 version of the statute, but explaining in a footnote that

under the new statute "[r]estitution is . . . a required condition of probation").

¶ 18    In practice, though, district courts retained significant discretion after the 1977 amendment because of new statutory provisions allowing courts to reduce restitution based on a defendant's ability to pay, and to waive restitution entirely if it would impose an undue hardship on the defendant or his family. *See* 1977 Colo. Sess. Laws at 863-64.

¶ 19    However, by 1996, the General Assembly had deleted those provisions.  *See* Ch. 288, sec. 4, § 16-11-204.5(1), 1996 Colo. Sess. Laws 1778; Ch. 139, sec. 1, § 16-11-204.5(1), 1985 Colo. Sess. Laws 628.

¶ 20    Now, under the statutory scheme, every order of conviction of a felony, misdemeanor, petty offense, or traffic misdemeanor offense "shall" include an order imposing restitution based on the victim's pecuniary loss proximately caused by the defendant's conduct. §§ 18-1.3-602(3)(a), -603(1), C.R.S. 2017; *see also* § 18-1.3-601(1)(b), C.R.S. 2017 (Defendants have an "obligation to make full restitution to those harmed by their misconduct."). Further, a statute applicable to probationary sentences provides:

"As a condition of *every* sentence to probation, the court *shall* order that the defendant make *full* restitution . . . ." § 18-1.3-205, C.R.S. 2017 (emphasis added).

¶ 21    Consequently, informed by this legislative history, we conclude that a general statement that restitution orders are reviewed for an abuse of discretion does not comport with the current statutory scheme. Indeed, in some cases, such a general statement could detract from appropriate legal analysis.

¶ 22    Even the somewhat more specific rule cited by the People — that a district court has discretion to determine the appropriate "terms and conditions" of restitution — is too broad. For example, in *Roberts v. People*, 130 P.3d 1005, 1006-10 (Colo. 2006), the supreme court clarified that a district court has discretion to decide an appropriate rate of prejudgment interest, but that the rate of postjudgment interest is *mandated* by section 18-1.3-603(4)(b)(I).

¶ 23    And, although it can be said that a court abuses its discretion if it misconstrues or misapplies the law, it seems inappropriate to use the term "discretion" in describing the appropriate standard of review, for example, in a case where the sole issue is the proper interpretation of the restitution statute. *See Dubois v. People*, 211

P.3d 41, 43 (Colo. 2009) (in interpreting a provision in the restitution statute, the supreme court did not use the term "discretion" in describing the standard of review, but instead stated that the proper interpretation of a statute is reviewed de novo).

¶ 24    Consequently, because in restitution cases, the statutory scheme no longer allows for abuse of discretion as the default standard of review, the appropriate standard of review necessarily will depend on which of a wide variety of restitution issues district courts decide and we are asked to review. Accordingly, the practice of applying the same standard of review in all such cases should be discarded and courts should proceed with caution and make sure to apply the appropriate standard of review in any particular subset of restitution cases.

¶ 25    As to the particular issue here, defendant challenges on appeal the district court's conclusion that the prosecution proved by a preponderance of the evidence that she caused $10,553.80 in loss to the pharmacy. That is a challenge to the sufficiency of the evidence. Consequently, we conclude that the appropriate standard is to review de novo whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most

10

favorable to the prosecution, establishes by a preponderance of the evidence that the defendant caused that amount of loss.  *See Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010); *Ortiz*, ¶ 26.

¶ 26     In so concluding, we caution that we are not saying this standard of review applies in every appeal where the proper *amount* of restitution is at issue.  The standard of review we apply in this case may not apply, for example, in a case in which the central issue is how to value a unique piece of stolen property.  *See* § 18-1.3-602(3)(a) (A district court must decide whether the victim's pecuniary loss can be "reasonably" calculated.).

## V.  Analysis

¶ 27     The central issue presented regarding the merits is whether it was appropriate to award restitution based on the evidence of defendant's thefts during the one-year period, or whether restitution should have been limited to defendant's thefts during the seventeen-day period.

¶ 28     Many of defendant's arguments on appeal relate to the quantity and quality of evidence needed to support a restitution order.  To be sure, the evidence of defendant's thefts during the seventeen-day period was strong.  That evidence included that pills

were stolen only on the particular days that defendant had worked in the pharmacy, and that the asset protection manager witnessed defendant stealing on the surveillance videos.

¶ 29    However, contrary to defendant's suggestion on appeal, the prosecution did not have to present that quantity and quality of evidence to meet the preponderance of the evidence standard for the entire one-year period.  For example, we disagree with defendant's reliance on *Ortiz* for the proposition that "first-hand knowledge" that the defendant caused the victim's loss — such as seeing defendant stealing on the surveillance videos — is necessary to meet the preponderance of the evidence standard.

¶ 30    "A fact is established by a preponderance of the evidence when, upon consideration of all the evidence, the existence of that fact is more probable than its nonexistence." *People v. Garner*, 806 P.2d 366, 370 (Colo. 1991).

¶ 31    Viewing the direct and circumstantial evidence in the light most favorable to the prosecution, we conclude that the district court did not err in determining that the prosecution had proven by a preponderance of the evidence that defendant caused $10,553.80 in loss to the pharmacy during the entire one-year period.

12

¶ 32    One of the most important pieces of evidence, of course, is defendant's own admission that she had been stealing medications "for a little over a year." She also admitted to the particular medications she had been stealing. The asset protection manager limited his inquiry and calculations to only those medications, limited his inquiry to the previous one-year period although defendant admitted that she had been stealing for "a little over a year," and used the wholesale prices of the medications rather than their retail prices.

¶ 33    Defendant also admitted that the total number of pills she had stolen was "in the thousands." Notably, the spreadsheet detailed the total number of pills of each medication that defendant had admitted to stealing, and the sum of those numbers is 5730, a number in the thousands.

¶ 34    The spreadsheet created by the asset protection manager was based on the pharmacy's automated system for tracking inventory for each type of medication. Evidence at the restitution hearing indicated that the automated system was reliable. The system automatically tracked the inventory of pills for each medication — when a pharmacy employee filled a prescription for a customer, that

13

number of pills was automatically deducted from the system.  There was also a regular process for excluding from the automated system issues such as pills being broken, damaged, or dropped on the floor.  The pharmacy conducted manual counts of pills on a regular basis as part of its normal course of business, to verify that the information in the automated system was accurate.  The asset protection manager received automated reports whenever there was a negative adjustment between the results of the hand counts and the inventory reflected in the automated system.  Because the pills were located in a secure area of the pharmacy only accessible by certain employees, the negative adjustments in the automated system were likely the result of theft by one of those employees.

¶ 35        Defendant faults the pharmacy for being unable to prove — for the entire one-year period — that the thousands of pills went missing on the precise days that she had worked in the pharmacy.  Under the circumstances, such evidence was not necessary to meet the preponderance of the evidence standard.  Notably, though, the asset protection manager testified that he believed defendant had been a full-time employee in the pharmacy during that entire one-year period.  Further, there was no indication that anyone else in

that pharmacy had been stealing medications, and there were no negative adjustments in the automated system for the period after defendant was caught.

¶ 36     All of this evidence, viewed in the light most favorable to the prosecution, is sufficient to affirm the restitution order.

¶ 37     In arguing the contrary, defendant attempts to analogize the facts of this case to the facts of several other cases. For example, in *Cumhuriyet v. People,* 200 Colo. 466, 615 P.2d 724 (1980), the defendant was caught attempting to make a purchase with a credit card that did not belong to her. The issue presented was whether she could be held liable for restitution for another purchase made at a different store earlier the same day with the same credit card. The supreme court held that the evidence was insufficient that she had made the earlier purchase. *Id.* at 469, 615 P.2d at 726.

¶ 38     The facts in *Cumhuriyet* would be somewhat similar to this case if it weren't for defendant's admissions that she had been stealing medications for a little over a year and that she had stolen thousands of pills. Given those admissions, defendant's reliance on *Cumhuriyet* is unpersuasive.

¶ 39   Defendant also cites *People v. Borquez*, 814 P.2d 382 (Colo. 1991), in which the supreme court noted that the defendant was ordered to pay restitution based on "an extensive list of items" that she herself had admitted stealing.  *Id.* at 383.  However, the court in *Borquez* was not addressing the quality or quantity of evidence needed to meet the preponderance of the evidence standard, and a defendant's express admission regarding the precise items that she had stolen is not necessary to meet the preponderance of the evidence standard.

¶ 40   Defendant also relies on *United States v. Ferdman*, a case in which the Tenth Circuit held that a victim's letter *estimating* its expenses incurred in investigating the defendant's fraud was too speculative to support a restitution award.  *See* 779 F.3d 1129, 1134, 1140 (10th Cir. 2015).  As an initial matter, we question defendant's reliance on a case applying a federal statute, given Colorado case law holding that, under Colorado law, an award of restitution may be based solely on a victim impact statement.  *See, e.g., Ortiz*, ¶ 28; *People v. Hill*, 296 P.3d 121, 126 (Colo. App. 2011); *see also* § 18-1.3-603(2).  Regardless, the evidence indicates that the information in the asset protection manager's spreadsheet was

not based on estimates, but instead reflected the precise number of stolen pills for each type of medication that defendant had admitted to stealing.

## VI. Conclusion

¶ 41    The order is affirmed.

CHIEF JUDGE LOEB and JUDGE VOGT concur.