1
 2023 COA 49 The People of the State of Colorado, Plaintiff-Appellee, v. Zachary Eugene Babcock, Defendant-Appellant. No. 20CA1678
Court of Appeals of Colorado, Second Division
June 8, 2023
 
          SUMMARY
 
 
          A
 division of the court of appeals concludes that, when the
 Colorado Supreme Court held in People v. Weeks, 2021
 CO 75, that a sentencing court loses the authority to impose
 restitution after ninety-one days absent an express finding
 of good cause, it did not mean that the court loses subject
 matter jurisdiction. Thus, the division holds that because
 the deadline is not jurisdictional, a defendant waives any
 challenge to the timeliness of the restitution award by
 requesting a hearing on restitution outside the
 ninety-one-day period.
 
 2
 
           Adams
 County District Court No. 19CR2947 Honorable Kristan K.
 Wheeler, Judge
 
 
          
 Taubman [*]
 and Berger [*]
 , JJ., concur.
 
 
          
 OPINION
 
 
           TOW
 JUDGE
 
 3
 
          ¶
 1 Defendant, Zachary Eugene Babcock, appeals the trial
 court's restitution order, asserting that the trial court
 lacked authority to enter a restitution order more than
 ninety-one days after sentencing without a timely and express
 finding of good cause to extend that deadline. The People
 contend that Babcock waived his right to challenge the
 timeliness of the restitution order by requesting a hearing
 date outside the ninety-one-day period before the expiration
 of that deadline. Answering a question not addressed by the
 Colorado Supreme Court in People v. Weeks, 2021 CO
 75, ¶ 24, we conclude that a defendant can waive the
 right to have restitution determined within the statutory
 time constraints and that Babcock did so by requesting a
 hearing outside the ninety-one-day period. We therefore
 address Babcock's challenge to the sufficiency of the
 evidence to support the restitution award and conclude the
 evidence was sufficient. Accordingly, we affirm the
 restitution order.
 
 
          I.
 Background
 
 
          ¶
 2 On December 19, 2019, Babcock pleaded guilty to child abuse
 resulting in serious bodily injury as part of a deferred
 judgment and sentence agreement. When the court accepted the
 plea, it reserved
 
 4
 
 restitution for ninety-one days. Eighty-two days later, on
 March 10, 2020, the prosecution filed its motion to impose
 restitution with supporting documentation, requesting
 $12,258.83 in restitution for medical bills. On March 18,
 2020 - ninety days after the court accepted the plea -
 defense counsel objected to the restitution request and asked
 that a restitution hearing be set in June - which would fall
 outside the ninety-one-day period - because of "the
 current pandemic the world is facing." The next day, the
 trial court set the hearing for June 11, 2020. Thereafter,
 the June hearing was continued because of COVID-19.
 Ultimately, the hearing was held on August 14, 2020, and the
 trial court imposed $12,258.83 in restitution.
 
 
          II.
 Timeliness
 
 
          A.
 Standard of Review and Applicable Law
 
 
          ¶
 3 This appeal calls for us to interpret the restitution
 statute, section 18-1.3-603, C.R.S. 2022. That presents a
 legal issue that we review de novo. Weeks, ¶
 24.
 
 
          ¶
 4 Every order of conviction for a felony "shall include
 consideration of restitution," which must take one or
 more of four prescribed forms: (1) an order to pay a specific
 amount; (2) an order
 
 5
 
 that the defendant is obligated to pay restitution, but
 deferring the establishment of the actual amount owed; (3) an
 order that the defendant is obligated to pay the actual costs
 of specific future treatment for the victim; or (4) a finding
 that no victim suffered a pecuniary loss and thus no
 restitution is owed. § 18-1.3-603(1). If the court
 reserves the determination of restitution, the statute
 provides that the amount of restitution "shall be
 determined within the ninety-one days immediately following
 the order of conviction, unless good cause is shown for
 extending the time period by which the restitution amount
 shall be determined." § 18-1.3-603(1)(b). For
 purposes of the restitution statute, an order of conviction
 for a felony includes the court's acceptance of a plea of
 guilty. People v. Roddy, 2021 CO 74, ¶¶
 18-21 (treating the acceptance of a deferred judgment and
 sentence agreement as an "order of conviction" for
 purposes of the statutory restitution deadlines); see
 also § 18-1.3-602(2), C.R.S. 2022.
 
 
          ¶
 5 The ninety-one-day "deadline in subsection (1)(b)
 refers to the court's determination of the restitution
 amount the defendant must pay, not to the prosecution's
 determination of the proposed amount of restitution."
 Weeks, ¶ 5. And "this deadline may be
 extended
 
 6
 
 only if, before the deadline expires, the court expressly
 finds good cause for doing so." Id. If the
 court fails to comply with this deadline, it loses the
 authority to award restitution. See id. at
 ¶¶ 7, 45.
 
 
          B.
 Analysis
 
 
          ¶
 6 The People contend that (1) the restitution statute's
 ninety-one-day deadline is not jurisdictional, and (2)
 Babcock waived "any timeliness challenge to the
 determination of restitution outside the ninety-one-day
 deadline by expressly requesting that the court set a . . .
 hearing for restitution more than three months after
 expiration of the ninety-one[-]day deadline." We agree
 with both contentions.
 
 
          1.
 Authority
 
 
          ¶
 7 We agree with the People that the restitution statute's
 ninety-one-day deadline is not jurisdictional.
 
 
          ¶
 8 Subject matter jurisdiction "concerns the court's
 authority to deal with the class of cases in which
 it renders judgment, not its authority to enter a particular
 judgment within that class." People in Interest of
 J.W. v. C.O., 2017 CO 105, ¶ 24; see also Minto
 v. Lambert, 870 P.2d 572, 575 (Colo.App. 1993) (noting
 that there is
 
 7
 
 often "confusion about subject matter jurisdiction
 because of a blurring of the distinction between the
 appropriate exercise of power and the absence of
 power"). But not all mandatory statutory time limits are
 jurisdictional. See, e.g., People v.
 McMurtry, 122 P.3d 237, 241-42 (Colo. 2005) (holding
 that the statutory right to a speedy trial within six months
 of pleading not guilty is not jurisdictional). When the
 legislature intends to impose a limit on the court's
 jurisdiction, it must do so explicitly. Wood v.
 People, 255 P.3d 1136, 1140 (Colo. 2011). A
 jurisdictional defect cannot be waived, but a
 nonjurisdictional deadline can be. Id.; see also
 People v. Sprinkle, 2021 CO 60, ¶ 17.
 
 
          ¶
 9 In Weeks, the supreme court stated that a trial
 court loses "authority" to order restitution more
 than ninety-one days after sentencing absent an express good
 cause finding to extend the deadline. Weeks, ¶
 45. Notably absent from Weeks - and from the
 statutory provision itself - is the use of the word
 "jurisdiction."
 
 
          ¶
 10 In People v. Turecek, 2012 COA 59, ¶¶
 20, 25, overruled in part by Weeks, 2021 CO 75, a
 division of this court determined that the statutory deadline
 for imposing restitution is not jurisdictional.
 
 8
 
 To say that a court lacks authority to order belated
 restitution does not use "authority" in a
 jurisdictional sense, but only in the same sense in which a
 court lacks "authority" to impose a sentence above
 the statutory maximum. Such action is an error of law,
 reversible on appeal, but it is not jurisdictional.
 
 
 Id. at ¶ 20 (quoting Dolan v. United
 States, 560 U.S. 605, 626 (2010) (Roberts, C.J.,
 dissenting)). Although in Weeks the supreme court
 overruled Turecek, the court did so only "[t]o
 the extent that [it was] inconsistent with"
 Weeks. Weeks, ¶ 47 n.16. We read
 nothing in Weeks that would be inconsistent with
 Turecek's jurisdictional analysis. Indeed, the
 fact that the discussion in Weeks is restricted to a
 sentencing court's authority - rather than its
 jurisdiction - indicates that the supreme court did not
 intend to abandon its long adhered-to distinction between the
 two.
 
 
          ¶
 11 We thus conclude that Weeks did not overrule
 Turecek's jurisdictional analysis. The
 ninety-one-day period remains a nonjurisdictional deadline
 and, as such, it can be waived. We therefore turn to the
 People's contention that Babcock waived his right to have
 restitution determined within ninety-one days by requesting a
 hearing date outside the ninety-one days.
 
 9
 
          2.
 Waiver
 
 
          ¶
 12 "Constitutional and statutory rights can be waived or
 forfeited." Richardson v. People, 2020 CO 46,
 ¶ 24. With respect to either a constitutional right or a
 statutory right, waiver is "the intentional
 relinquishment of a known right or privilege."
 Id. (quoting People v. Rediger, 2018 CO 32,
 ¶ 39).
 
 
          ¶
 13 Defense counsel requested a hearing outside the
 ninety-one-day period before Weeks was decided. But
 at the time, the restitution statute stated, as it does now,
 that "the specific amount of restitution shall be
 determined within the ninety-one days immediately following
 the order of conviction, unless good cause is shown for
 extending the time period by which the restitution amount
 shall be determined." § 18-1.3-603(1)(b), C.R.S.
 2019. And before defense counsel requested that the hearing
 be set outside the ninety-one-day period, at least one
 published decision by a division of this court resolved the
 timeliness issue largely as the supreme court did later in
 Weeks. See Turecek, ¶ 25 (holding that
 the deadline applies to the court's determination of
 restitution and reversing the order); see also People v.
 Perez, 2020 COA 83, ¶¶ 18-27 (discussing the
 historical view that the deadline in section
 
 10
 
 18-1.3-603(1)(b) applies to the court), overruled in part
 by Weeks, 2021 CO 75, cert. granted, judgment
 vacated, and case remanded, (Colo. No. 20SC559, Dec. 6,
 2021) (unpublished order). Therefore, at the time defense
 counsel requested that a restitution hearing be set outside
 the ninety-one-day period, he was asking the trial court to
 act outside the timeframe proscribed by statute and case law.
 By doing so, he intentionally relinquished a known
 right.[1] See Rediger, ¶ 39.
 
 
          ¶
 14 Finally, to the extent Babcock contends that he also had a
 right to have the trial court make an express finding of good
 cause to extend the deadline within the original ninety-one
 days, and he did not waive that right, we disagree. The
 requirement that the trial court make an express finding of
 good cause to extend the deadline within the original
 ninety-one days is a "statutory procedure outlined in
 Weeks" that allows the trial court to retain
 its authority to impose restitution beyond the original
 ninety-one-day period. See People v. Tennyson, 2023
 COA 2, ¶¶ 2, 25-29. It is not a defendant's
 right.
 
 11
 
          ¶
 15 Accordingly, we conclude that Babcock waived his challenge
 to the timeliness of the restitution order, and we therefore
 do not address the merits of that challenge. See
 Rediger, ¶ 40 (stating that waiver
 "extinguishes error, and therefore appellate
 review").
 
 
          III.
 Sufficiency of the Evidence
 
 
          ¶
 16 We disagree with Babcock's contention that
 insufficient evidence supported the restitution award for the
 medical bills because the People failed to prove (1) that his
 conduct proximately caused the losses incurred and (2) the
 amount of restitution.
 
 
          A.
 Standard of Review
 
 
          ¶
 17 Both parties agree that we review de novo Babcock's
 sufficiency challenge to the restitution order, including his
 challenge to the court's determination that Babcock
 proximately caused the losses incurred. See People v.
 Barbre, 2018 COA 123, ¶ 25 ("[T]he appropriate
 standard is to review de novo whether the evidence . . .
 establishes by a preponderance of the evidence that the
 defendant caused that amount of loss."). We note,
 however, that the appropriate standard of review is far from
 clear. See People v. Moss, 2022 COA 92, ¶ 11
 (pointing out the different standards of review used in
 reviewing sufficiency challenges to restitution
 
 12
 
 orders); People v. Martinez, 2022 COA 28, ¶ 14
 (applying the abuse of discretion standard of review in
 reviewing the district court's determination that the
 defendant's action proximately caused the victim's
 losses) (cert. granted Oct. 24, 2022);
 Martinez, ¶ 60 (J. Jones, J., specially
 concurring) (reasoning that proximate cause for restitution
 purposes is a question of fact and as such should be reviewed
 for clear error). But because the parties do not raise this
 issue, and because our outcome would be the same under any of
 these approaches, we do not delve into the differences that
 may exist among these standards. See Moss, ¶
 11.
 
 
          ¶
 18 Electing to apply the standard invoked by both parties, we
 review the record de novo to determine whether the evidence
 was sufficient in both quantity and quality to support a
 restitution award. Barbre, ¶ 25; Dempsey v.
 People, 117 P.3d 800, 807 (Colo. 2005). In doing so, we
 evaluate "whether the evidence, both direct and
 circumstantial, when viewed as a whole and in the light most
 favorable to the prosecution, establishes by a preponderance
 of the evidence that the defendant caused that amount of
 loss." Barbre, ¶ 25. "As with a
 sufficiency challenge to a conviction, however, '[w]e
 will not disturb a district court's findings and
 conclusions if the
 
 13
 
 record supports them, even though reasonable people might
 arrive at different conclusions based on the same
 facts.'" Moss, ¶ 11 (quoting
 People v. Dyson, 2021 COA 57, ¶ 15).
 "Thus, our de novo determination is whether the
 prosecution presented sufficient evidence to convince a
 reasonable fact finder by a preponderance of the evidence of
 the amount of restitution owed." Id.
 
 
          B.
 Applicable Law
 
 
          ¶
 19 Individuals convicted of criminal behavior must "make
 full restitution to those harmed by their misconduct."
 § 18-1.3-601(1)(b), C.R.S. 2022. Restitution "means
 any pecuniary loss suffered by a victim . . . proximately
 caused by an offender's conduct . . . that can be
 reasonably calculated and recompensed in money." §
 18-1.3-602(3)(a). "Proximate cause in the context of
 restitution is defined as a cause which in natural and
 probable sequence produced the claimed injury and without
 which the claimed injury would not have been sustained."
 People v. Rivera, 250 P.3d 1272, 1274 (Colo.App.
 2010). The prosecution must prove by a preponderance of the
 evidence that the defendant's conduct proximately caused
 the victim's loss and the amount of that loss. People
 v. Henry, 2018 COA 48M, ¶ 15.
 
 14
 
          C.
 Analysis
 
 
          1.
 Proximate Cause
 
 
          ¶
 20 We disagree with Babcock's contention that the People
 failed to prove by a preponderance of the evidence that he
 proximately caused I.B.'s injuries, which resulted in the
 medical bills.
 
 
          ¶
 21 Babcock said that I.B., then two years old, threw a
 tantrum because she did not want to go to bed, and in the
 process, she launched herself from his arms and hit her chin
 on the bed's railing. I.B. was sluggish the following
 morning and was throwing up by the afternoon. Babcock later
 found I.B. unconscious on the floor and shook her to wake her
 up.
 
 
          ¶
 22 At the restitution hearing, Babcock testified that he was
 anxious and was not as gentle as he could have been in
 shaking I.B. when he found her unconscious. The evidence
 presented at the restitution hearing showed that Babcock was
 taking care of I.B. by himself around the time she exhibited
 symptoms.
 
 
          ¶
 23 I.B. was taken to a medical center by ambulance the
 evening Babcock shook her. She had a brain bleed and was
 airlifted to a children's hospital.
 
 15
 
          ¶
 24 Dr. Daniel Lindburg treated I.B. and concluded I.B.'s
 injuries - a subdural hematoma and retinal hemorrhaging -
 were inconsistent with Babcock's account that I.B. had
 fallen. Although Dr. Lindburg could not place the cause of
 the injuries within an exact timeframe, he said that vomiting
 is a symptom of a head injury and loss of consciousness is a
 significant event likely following an abuse incident. Dr.
 Lindburg said that I.B.'s injuries were caused by abuse.
 He explained that it is possible that there were multiple
 incidents of abuse or one incident.
 
 
          ¶
 25 A police officer interviewing Babcock told him that
 I.B.'s injuries were caused by I.B. being shaken, but it
 is unclear why the police officer thought that. And while Dr.
 Lindburg said that I.B. would have started showing symptoms
 almost immediately after being shaken, or soon thereafter,
 this statement appears to be in response to the
 police officer's theory that shaking was the cause of her
 injuries - not the predicate for that theory. Indeed, I.B.
 was already showing symptoms of abuse - vomiting and loss of
 consciousness - before Babcock shook her.
 
 
          ¶
 26 In other words, nothing in the record of the restitution
 hearing indicates that Dr. Lindburg thought that I.B.'s
 injuries stemmed
 
 16
 
 solely from Babcock shaking her when he found her
 unconscious. Rather, Dr. Lindburg's opinion was that
 I.B.'s head injuries were inconsistent with Babcock's
 account and were instead caused by one or more incidents of
 abuse. And Babcock was the only person taking care of I.B.
 when she started exhibiting symptoms of having been abused.
 
 
          ¶
 27 Thus, based on the evidence presented, the prosecution
 provided sufficient evidence to enable the trial court to
 find by a preponderance of the evidence that Babcock's
 conduct proximately caused I.B.'s need for the medical
 treatment referenced in the medical bills.
 
 
          2.
 Restitution Amount
 
 
          ¶
 28 Babcock also contends that the People did not prove the
 amount of restitution by a preponderance of the evidence. The
 People contend that Babcock waived his challenge to the
 amount of restitution because at the restitution hearing,
 defense counsel said, "I believe it's clear that the
 dispute here is proximate cause. It is not the amount of
 money . . . which was tendered in the Prosecution's
 restitution exhibit, which, I believe is approximately twelve
 thousand dollars." In other words, Babcock acknowledged
 at
 
 17
 
 the hearing that the evidence of the amount of
 restitution was sufficient. Whether this was a waiver or a
 concession, he cannot now be heard to make the exact opposite
 argument.
 
 
          ¶
 29 But even if we assume the challenge is properly before us,
 we agree with the People that they proved the amount of
 restitution by a preponderance of the evidence.
 
 
          ¶
 30 The prosecutor submitted documents showing the amount paid
 for I.B.'s medical bills through March 9, 2020, totaling
 $12,258.83.[2] The bills showed the date of service,
 medical provider, claim type, diagnosis code, diagnosis
 description, billed amount, and amount paid.
 
 
          ¶
 31 No record evidence from the restitution hearing calls into
 question the accuracy of these amounts.[3] The trial court
 was
 
 18
 
 therefore justified in relying on the medical bills in
 determining the amount of restitution. See People v.
 Welliver, 2012 COA 44, ¶ 6 (concluding that the
 court was justified in relying on the presentence report to
 determine the amount of restitution when the defendant did
 not object to the amount).
 
 
          IV.
 Disposition
 
 
          ¶
 32 The restitution order is affirmed.
 
 
           JUDGE
 TAUBMAN and JUDGE BERGER concur.
 
 
 ---------
 
 
 Notes:
 
 
 [*]Sitting by assignment of the
 Chief Justice under provisions of Colo. Const. art. VI,
 § 5(3), and § 24-51-1105, C.R.S. 2022.
 
 
 [1] The People do not argue that this was
 an invited error.
 
 
 [2] Babcock's contention that the
 prosecution only sought restitution for medical bills through
 March 9, 2019, based on the prosecutor's mistake in
 saying "2019" at the hearing, is unavailing given
 the written request the prosecutor submitted before the
 hearing, which sought restitution for medical bills through
 March 9, 2020, and the supporting medical bills, which
 contained dates in 2020.
 
 
 [3] To the extent Babcock contends that
 the People were required to have doctors and employees from
 the agency that paid I.B.'s medical bills testify, we
 disagree. The rules of evidence are not applicable at
 restitution hearings, and the court is permitted to rely on
 hearsay and documentary evidence. People v. Vasseur,
 2016 COA 107, ¶¶ 20-21; see also People in
 Interest of A.V., 2018 COA 138M, ¶ 35 ("[T]he
 prosecution may rely solely on documentary evidence to meet
 its burden."). And Babcock never objected to the
 prosecutor proceeding this way.
 
 
 ---------