23CA1643 Peo in Interest of ZGJ 11-21-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1643
Jefferson County District Court No. 21JD155
Honorable Ann Gail Meinster, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Z.G.J.,

Juvenile-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE SULLIVAN
J. Jones and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 21, 2024

---

Philip J. Weiser, Attorney General, Frank R. Lawson, Senior Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee

K. Andrew Fitzgerald, Alternate Defense Counsel, Grand Junction, Colorado, for Juvenile-Appellant

¶ 1 Defendant, Z.G.J., appeals the order awarding restitution for the victim's family's counseling expenses after he pleaded guilty to one count of sexual assault. We affirm.

## I. Background

¶ 2 In April 2021, Z.J.'s sister contacted law enforcement, alleging that Z.J. had sexually assaulted her multiple times between 2015 and 2018. Law enforcement interviewed Z.J. regarding his sister's allegation. Z.J. admitted he had sexually assaulted her on multiple occasions when she was eight or nine years old. In February 2022, due to Z.J.'s admission, law enforcement reopened a case involving Z.J.'s former girlfriend, C.V., who had alleged years earlier that Z.J. had sexually assaulted her multiple times between 2017 and 2018. Z.J., his sister, and C.V. were all minors at the time of the sexual assaults. The prosecution charged Z.J. with several offenses in two cases for sexually assaulting his sister and C.V.

¶ 3 In May 2023, the parties reached a global disposition in which Z.J. agreed to plead guilty to an added count of sexual assault in the case involving C.V. The court accepted the disposition, and Z.J. pleaded guilty to sexual assault under section 18-3-402(1)(a), C.R.S. 2024, a class 4 felony. In exchange, the prosecution agreed

1

to dismiss the case involving Z.J.'s sister, along with the original counts in the case involving C.V. The parties also stipulated to a deferred adjudication and sentence so that Z.J. could enter a treatment program.

¶ 4 At the plea hearing, the prosecutor filed a notice of restitution, requesting $9,120 for mental health counseling for C.V. and three of her immediate family members. The Crime Victim Compensation Board for the First Judicial District (the Board) paid those counseling expenses. The prosecutor submitted four crime victim compensation summaries from the Board that corroborated the amount, although the summaries didn't identify the provider or providers of the mental health counseling.

¶ 5 Defense counsel didn't agree with the requested amount, saying that she may "potentially need to request a hearing on that." The court reserved restitution so defense counsel could have an opportunity to file an objection. Z.J. then obtained new defense counsel.

¶ 6 At the sentencing hearing, C.V. and her immediate family members gave victim impact statements. Z.J.'s new defense counsel said that she anticipated objecting to restitution. The

2

prosecutor requested that the court award the full amount of requested restitution.

¶ 7     One week later, Z.J. objected to restitution on the ground that the prosecutor had only provided the court with summaries. The court denied Z.J.'s objection.

¶ 8     Z.J. now appeals. He contends that insufficient evidence supports the court's restitution award for C.V.'s family members because the prosecutor provided only summaries of the counseling expenses. (Z.J. doesn't dispute the restitution amount awarded to C.V.) Z.J. also weaves in a proximate cause argument, asserting that the court erred by determining that he "was the proximate cause of the [family's] loss when the required evidence under the statute ha[d] not been met."

¶ 9     We interpret Z.J.'s argument as twofold: (1) the court erred by determining that he proximately caused the losses to C.V.'s family members and (2) the summaries were insufficient to prove the amount that the Board paid for C.V.'s family members' counseling. We disagree with these contentions and affirm.

## II. Discussion

### A. Standard of Review

¶ 10 In the restitution context, we review for clear error the district court's determination that the defendant proximately caused the victim's losses. *Martinez v. People*, 2024 CO 6M, ¶ 32. However, when the defendant frames his argument as a challenge to the sufficiency of the evidence supporting the amount of restitution awarded — that is, a challenge to the *quantum* of evidence provided to the court — our review is de novo. *See id.* at ¶¶ 19-22; *People v. Moss*, 2022 COA 92, ¶ 11. In other words, "our de novo determination is whether the prosecution presented sufficient evidence to convince a reasonable fact finder by a preponderance of the evidence of the amount of restitution owed." *Moss*, ¶ 11.

¶ 11 We also review issues of statutory interpretation de novo. *People v. Henry*, 2018 COA 48M, ¶ 13. When construing a statute, our goal is to give effect to the General Assembly's intent. *People v. Webb-Johnson*, 113 P.3d 1253, 1253 (Colo. App. 2005). To determine the General Assembly's intent, we first look to the statute's language, giving words and phrases their plain and ordinary meanings. *Henry*, ¶ 14 (citation omitted).

## B.    Applicable Law

¶ 12    Section 18-1.3-603, C.R.S. 2024, of the Restitution Act, §§ 18-1.3-601 to -603, C.R.S. 2024, requires convicted offenders to pay restitution to compensate crime victims for the harm they suffered as a result of the offender's conduct.  "The purpose of restitution is to make the victim whole, and the Restitution Act is to be liberally construed to accomplish that purpose."  *People v. McCann,* 122 P.3d 1085, 1087 (Colo. App. 2005).

¶ 13    The Act provides that "[a]n effective criminal justice system requires timely restitution to victims of crime and to members of the immediate families of such victims in order to lessen the financial burdens inflicted upon them, to compensate them for their suffering and hardship, and to preserve the individual dignity of victims . . . ."  § 18-1.3-601(1)(e).  As relevant here, a "victim" includes, but isn't limited to, "[a]ny victim compensation board that has paid a victim compensation claim."  § 18-1.3-602(4)(a)(IV).

¶ 14    The prosecution bears the burden of proving by a preponderance of the evidence "the amount of restitution owed and, generally, that the defendant's conduct was the proximate cause of the victim's loss." *Henry,* ¶ 15; *see People v. Barbre,* 2018 COA 123,

5

¶ 30.  "A fact is established by a preponderance of the evidence when, upon consideration of all the evidence, the existence of that fact is more probable than its nonexistence." *People v. Garner*, 806 P.2d 366, 370 (Colo. 1991).  This burden requires more than speculation, but the prosecution need not prove restitution by the same quality of evidence required in a criminal trial on the merits. *People in Interest of A.V.*, 2018 COA 138M, ¶ 24.

¶ 15    In 2015, the General Assembly amended the Act to authorize restitution in cases where a victim compensation board seeks reimbursement for assistance it provides to a victim.  *See Henry*, ¶ 16 ("A crime victim may seek compensation from a compensation board . . . .  If the board pays such a claim, a court may order the defendant to reimburse the board for the amount of assistance that it paid to the victim.").

¶ 16    The 2015 amendment created a rebuttable presumption in section 18-1.3-603(10) that the amount paid by a victim compensation board is a direct result of the defendant's criminal conduct.  *See* § 18-1.3-603(10); *Henry*, ¶ 17.  Specifically, section 18-1.3-603(10)(a) says that, if the victim compensation board provides assistance to or on behalf of a victim, "the amount of

assistance provided and requested by the crime victim compensation board is presumed to be a direct result of the defendant's criminal conduct and must be considered by the court in determining the amount of restitution ordered." § 18-1.3-603(10)(a). The prosecution can establish the amount that the court must presume is a direct result of the defendant's criminal conduct in one of two ways — by providing either

> (I) [a] list of the amount of money paid to each provider; or
>
> (II) [i]f the identity or location of a provider would pose a threat to the safety or welfare of the victim, summary data reflecting what total payments were made for [various expenses including mental health counseling].

§ 18-1.3-603(10)(b). However, the prosecution need not rely on the statutory presumption to establish the amount of restitution; rather, it can also rely on victim impact statements or "other means." § 18-1.3-603(2)(a); *see Barbre,* ¶ 40 ("[U]nder Colorado law, an award of restitution may be based solely on a victim impact statement." (citing *People v. Ortiz,* 2016 COA 58, ¶ 28)); *see also A.V.,* ¶ 33 ("To meet its burden of proof, a prosecutor may rely solely on victim impact statements."). The court "shall base its order for

restitution" on the information presented by the prosecution. § 18-1.3-603(2)(a).

¶ 17 With these principles in mind, we turn to whether the evidence was sufficient to support the court's restitution award to C.V.'s family.

## C. Analysis

¶ 18 The Board determined that C.V.'s mother, father, and sister were "secondary victims." The prosecutor provided the court with summaries from the Board reflecting the total amounts that the Board had paid for mental health counseling services for C.V. and her family members. The summaries showed that the Board had paid the following for mental health counseling for C.V.'s family members at the time of the sentencing hearing: (1) $2,500 for C.V.'s sister; (2) $1,260 for C.V.'s mother; and (3) $270 for C.V.'s father.

¶ 19 The prosecutor also presented victim impact statements from C.V. and each of her family members detailing how they had suffered due to Z.J.'s conduct. As C.V.'s mother explained at the sentencing hearing,

(1) Each member of the C.V.'s family struggled from "serious psychological issues" due to Z.J.'s conduct.

8

(2)     C.V. and her sister began struggling in school, were unable to focus, and became "actively suicidal."

(3)     The fear of running into Z.J. exacerbated the family's stress, and C.V.'s parents lived in constant fear that C.V. or her sister would die by suicide.

(4)     C.V.'s sister's therapy cost $120 per week, and the combined weekly cost for all four family members therapy was $720, or $37,440 per year.

¶ 20     Thus, the court had both the Board's summaries and the family's victim impact statements available to it when deciding restitution.

¶ 21     We conclude that the court didn't clearly err by finding that Z.J. proximately caused the family's psychological injuries because the combination of this information provided some evidence to support that finding.  Indeed, in her victim impact statement, C.V.'s mother tied the family's need for mental health counseling directly to Z.J.'s criminal conduct.  *See People v. Miller*, 830 P.2d 1092, 1094 (Colo. App. 1991) ("[I]f the defendant fails to show that [a victim impact statement] is inaccurate or untrue, the trial court is entitled to rely upon the report or statement as submitted.").

¶ 22     We also conclude on de novo review that the same information, when viewed in the light most favorable to the prosecution, was sufficient for the prosecution to prove by a preponderance of the evidence the amount of restitution that Z.J. owed to the Board. Based on C.V.'s mother's victim impact statement, it appears that the Board paid but a small portion of C.V.'s family's counseling expenses.

¶ 23     In determining that sufficient evidence supported the court's restitution order, we note that we don't rely on section 18-1.3-603(10)(a)'s rebuttable presumption. As the People acknowledge, the summary lists that the Board provided didn't identify the mental health counseling providers, as required by subsection 603(10)(b)(I). Nor do the People rely on subsection 603(10)(b)(II) to defend the court's restitution award. But, as explained above, we need not rely on the statute's rebuttable presumption to affirm the court's restitution award.

### III.   Disposition

¶ 24     We affirm the order.

JUDGE J. JONES and JUDGE LIPINSKY concur.