The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
November 30, 2023

## 2023COA112

**No. 20CA1153, *People v. Poot-Baca* — Crimes — Identity Theft — Criminal Possession of a Financial Device; Criminal Law — Prosecution of Multiple Counts for Same Act — Lesser Included Offenses**

A division of the court of appeals concludes that criminal
possession of a financial device, § 18-5-903(1), C.R.S. 2023, is not a
lesser included offense of identity theft, § 18-5-902(1)(a), C.R.S.
2023, under either section 18-1-408(5)(a), C.R.S. 2023, or section
18-1-408(5)(c). Because the division also rejects the defendant's
other claims, the division affirms the judgment and restitution
order.

COLORADO COURT OF APPEALS                                        **2023COA112**

Court of Appeals No. 20CA1153
City and County of Denver District Court No. 19CR1327
Honorable Jay S. Grant, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Christopher F. Poot-Baca,

Defendant-Appellant.

JUDGMENT AND ORDER AFFIRMED

Division IV
Opinion by JUDGE NAVARRO
Grove and Lum, JJ., concur

Announced November 30, 2023

Philip J. Weiser, Attorney General, Trina K. Kissel, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Elyse Marie Maranjian, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Christopher F. Poot-Baca, appeals the judgment of conviction imposed on jury verdicts finding him guilty of robbery of an at-risk person, identity theft, and criminal possession of a financial device.  He also appeals the district court's restitution order.  We affirm the judgment and order.  In doing so, we hold that criminal possession of a financial device is not a lesser included offense of identity theft.

## I.     Factual and Procedural History

¶ 2     On the night of January 14, 2019, eighty-one-year-old Minnie Sheppard was waiting at a bus stop when a man pushed her to the ground, took her purse and bag, and ran away.  Police and paramedics arrived at the scene and transported Sheppard to the hospital, where she was diagnosed with a knee fracture.

¶ 3     While at the crime scene, Sheppard described her assailant's physical appearance to the officers and said he had been drinking out of a Coca-Cola (Coke) bottle, which he dropped before attacking her.  At the hospital, she clarified that it was actually a Coke can.  An officer collected a Coke can from the crime scene, and a DNA sample taken from it matched that of Poot-Baca.

¶ 4    Sheppard's credit card, a Discover Card, was in her purse when it was stolen. The following day, three unauthorized charges were made online with the credit card. A few hours later, two men shopped at a Foot Locker store, and one tried to use her card. The transactions were declined, and the interaction was recorded on surveillance video. Poot-Baca was later arrested wearing a sweatshirt very similar to the one worn by the man in the surveillance video — a purple sweatshirt bearing an image of Marilyn Monroe.

¶ 5    The prosecution charged Poot-Baca with robbery of an at-risk adult, a crime of violence, identity theft, and criminal possession of a financial device. A jury convicted him as charged.

¶ 6    On appeal, Poot-Baca contends that the district court erred by (1) admitting evidence of Sheppard's pretrial identification of him and her identification of him during trial; (2) failing to merge the possession of a financial device conviction with the identity theft conviction because the former is a lesser included offense of the latter; and (3) ordering restitution for uncharged conduct.

## II. Identification Evidence

¶ 7    Poot-Baca contends that the district court erroneously admitted into evidence Sheppard's identifications of him as the robber because they were the unreliable products of an impermissibly suggestive pretrial identification procedure. We conclude, however, that any error was harmless beyond a reasonable doubt.

### A. Standard of Review and Preservation

¶ 8    Because the admission of an unreliable identification of the defendant violates due process, *People v. Martinez*, 2015 COA 37, ¶ 11, and because Poot-Baca preserved the issue, we apply the constitutional harmless error standard to determine whether any error requires reversal. *See id.* at ¶ 10. "Under this standard, the prosecution must show the error was harmless beyond a reasonable doubt." *Id.* "If there is a reasonable possibility the error contributed to the conviction, we will reverse." *Id.*

### B. Relevant Facts

¶ 9    Sheppard provided a description of the robber shortly after the incident, but she did not identify anyone as the robber when

presented with two photographic arrays of potential suspects, one of which included a photograph of Poot-Baca.

¶ 10    Before trial, the parties appeared in court for a deposition of Sheppard under section 18-6.5-103.5, C.R.S. 2023, premised on her at-risk status.  The prosecution wished to preserve her testimony for presentation at trial if she was not available at the time of trial.  *See* § 18-6.5-103.5(4).  Defense counsel sought to waive Poot-Baca's appearance at the deposition, but the prosecutor objected.  The district court ruled that Poot-Baca had to attend the deposition because Sheppard's deposition testimony might become a substitute for her trial testimony.

¶ 11    The prosecutor did not ask Sheppard to identify her assailant during the deposition.  Immediately afterward, however, Sheppard spontaneously told the prosecution's investigator that she recognized Poot-Baca as her assailant.  Defense counsel moved to suppress this identification and any subsequent in-court identification.  The court denied the motion, finding there was no "impermissibly suggestive pretrial identification procedure arranged by law enforcement" and "[t]he inherent suggestiveness of the courtroom setting [did] not rise to the level that requires the Court

to assess the identification for reliability under [*Neil v.*] *Biggers*[, 409 U.S. 188 (1972)]."

¶ 12    Sheppard testified during the trial.  The prosecutor asked her about recognizing Poot-Baca as the robber during the deposition. Sheppard confirmed that she had recognized him then, and she again identified him during trial as the man who had robbed her. Defense counsel extensively cross-examined Sheppard about the circumstances surrounding her identification of Poot-Baca, calling its reliability into question in light of those circumstances.

## C.    Analysis

¶ 13    Poot-Baca contends that the district court erred by (1) denying his request to waive his presence at the deposition; (2) admitting Sheppard's pretrial identification of him following the deposition because it was unreliable under the circumstances; and (3) admitting her subsequent in-court identification.  We need not decide whether the court erred because any error was harmless in light of the other identification evidence admitted at trial and not challenged on appeal.

¶ 14    Most significantly, the prosecution admitted DNA evidence that identified Poot-Baca as the robber.  Sheppard told officers

immediately after the robbery that the robber had been drinking a Coke product and had thrown the can on the ground at the bus stop. Officers retrieved the Coke can approximately twenty minutes later and found no other Coke cans at the bus stop. According to other trial evidence, a match for the DNA profile obtained from the can was "estimated to be at least 2 octillion times more likely if the sample originated from Christopher Poot-Baca than if it originated from one unknown unrelated person." Based on this data, and in the absence of a showing that Poot-Baca had an identical twin, the evidence showed that the probability was greater than 99.9 percent that Poot-Baca was the source of the DNA on the Coke can.

¶ 15    At trial, Poot-Baca argued that the DNA evidence established only that he was in the area some time before the robbery. He presented somewhat vague evidence that he had attended appointments in the area near the bus stop and that he did not show up at an appointment on the day of the robbery. But that evidence did not actually place him at the bus stop previously or show that he took the bus on prior occasions. In any event, the fact that Sheppard saw the robber drinking out of the Coke can

immediately before the robbery firmly connected Poot-Baca to the robbery given the DNA evidence.[1]

¶ 16    Moreover, a still photo from an officer's body camera footage recorded when the officer first responded to the scene supported Sheppard's account. That photo shows a Coke can on a sidewalk. Photos taken by officers when they returned to the scene twenty minutes later also show a Coke can on the sidewalk. None of the photos depicts any other Coke cans. If Poot-Baca's theory that he might have left the Coke can at the bus stop before the robbery were true, however, there should have been two Coke cans left at the bus stop: the can with his DNA as well as the one the robber left. But the police discovered only the Coke can with Poot-Baca's DNA. Hence, to believe the defense theory, the jury would have had to find that, in the twenty minutes between the police's first response to the scene and their second, someone removed the Coke can the robber threw on the ground and replaced it with a Coke can bearing Poot-Baca's DNA. We do not discern a reasonable

---

[1] As noted, Sheppard first said it was a Coke bottle but clarified shortly thereafter that it was actually a Coke can. She consistently maintained that the robber drank from a Coke container, and no other Coke container was found at the crime scene.

7

possibility that the jury would have made this finding if only Sheppard's identifications of Poot-Baca had not been admitted at trial.

¶ 17    Furthermore, the prosecution presented evidence that the person who tried to use Sheppard's credit card at Foot Locker shortly after the robbery wore the same distinctive sweatshirt as Poot-Baca wore when he was arrested a month later.  That is, the evidence showed that Poot-Baca possessed Sheppard's credit card taken during the robbery and attempted to use it the next day.

¶ 18    As a result, the prosecution presented overwhelming evidence that Poot-Baca was the robber, independent of Sheppard's identifications of him.  Given this other evidence identifying him as the culprit, we conclude that the guilty verdicts were surely unattributable to the alleged error in admitting Sheppard's identifications.  Therefore, the alleged error was harmless beyond a reasonable doubt.  *See Martinez*, ¶ 15 (holding that, given the substantial evidence that the defendant was the person whom the victim saw trying to break into her home, which was independent of the victim's identification of him during a show-up procedure, any error in admitting the identification evidence was harmless beyond

8

a reasonable doubt); *see also People v. Singley*, 2015 COA 78M, ¶ 34 ("[C]onsidering the extensive evidence of Singley's guilt, we conclude that any error by the trial court in implicitly concluding that J.A.C.'s out-of-court identification was reliable under the totality of the circumstances was harmless beyond a reasonable doubt."); *People v. Houser*, 2013 COA 11, ¶ 56 ("[W]e further conclude that overwhelming evidence of defendant's guilt rendered this error harmless beyond a reasonable doubt.").

## III. Double Jeopardy

¶ 19    Poot-Baca next contends that criminal possession of a financial device is a lesser included offense of identity theft. As a result, he says, the district court erred by not merging his conviction for criminal possession of a financial device with his conviction for identity theft. We disagree.

## A. General Principles

¶ 20    To the extent Poot-Baca's claim presents a question of statutory construction, we review it de novo. *People v. Kern*, 2020 COA 96, ¶ 31. In interpreting a statute, our task is "to ascertain and give effect to the General Assembly's intent." *Id.* We begin with the statute's plain language, examining "the statutory design as a

9

whole" and "giving effect to the language of each provision and harmonizing apparent conflicts where possible." *Id.* We read the statute's language in context and construe the words and phrases according to their common usage. *Id.*

¶ 21   We also review de novo whether a conviction violates the constitutional prohibition against double jeopardy. *Id.* at ¶ 26. Because Poot-Baca did not preserve this claim, we may reverse only if plain error occurred. *Id.*

¶ 22   The United States and Colorado Constitutions forbid imposing multiple punishments for the same offense if the legislature has not authorized multiple punishments. *Id.* at ¶ 27. When a defendant's conduct establishes the commission of more than one offense, the defendant may be prosecuted for each such offense. *Id.*; *see* § 18-1-408(1), C.R.S. 2023. "If one offense is included in the other, however, the defendant may not be convicted of both." *Kern*, ¶ 27; *see* § 18-1-408(1)(a).

## B.   The Offenses at Issue

¶ 23   As relevant here, a person commits identity theft if the person "[k]nowingly uses the personal identifying information, financial identifying information, or financial device of another without

10

permission or lawful authority with the intent to obtain cash, credit, property, services, or any other thing of value or to make a financial payment." § 18-5-902(1)(a), C.R.S. 2023.  As charged in this case, identity theft is a class 4 felony.  § 18-5-902(2).

¶ 24    "A person commits criminal possession of a financial device if the person has in his or her possession or under his or her control any financial device that the person knows, or reasonably should know, to be lost, stolen, or delivered under mistake as to the identity or address of the account holder." § 18-5-903(1), C.R.S. 2023.  As charged here, this offense is a class 2 misdemeanor. § 18-5-903(2)(a).

¶ 25    A "financial device" includes a credit card.  § 18-5-901(6)(a), C.R.S. 2023.

### C.    Section 18-1-408(5)(a)

¶ 26    Poot-Baca argues that criminal possession of a financial device is a lesser included offense of identity theft under section 18-1-408(5)(a) (subsection 408(5)(a)).  Pursuant to that provision, one offense is included in another charged offense when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged."  § 18-1-

11

408(5)(a); *see also Reyna-Abarca v. People*, 2017 CO 15, ¶ 51. This test requires a court to "compare the elements of the statutes rather than the specific evidence used to sustain the charges in a particular case." *People v. Welborne*, 2018 COA 127, ¶ 8.

¶ 27    Under our supreme court's interpretation of subsection 408(5)(a), "an offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense." *Reyna-Abarca*, ¶ 64. Our supreme court has since refined this "subset" test to clarify that there are two ways for an offense to be included in another for purposes of subsection 408(5)(a). *See People v. Rock*, 2017 CO 84, ¶ 16; *Page v. People*, 2017 CO 88, ¶¶ 10-11; *see also Kern*, ¶ 28; *Welborne*, ¶¶ 11-12.

¶ 28    First, a lesser offense is included in the greater offense when there are multiple ways to commit the greater and proof of the commission of at least one of those ways necessarily proves commission of the lesser. *Kern*, ¶ 28; *Page*, ¶ 10. Second, an offense may be included in another under the statutory elements test when there are multiple ways to commit the lesser, not all of

12

which are included within the greater.  *Kern*, ¶ 28; *Page*, ¶ 11.

Under those circumstances, "[a]ny set of elements sufficient for commission of that lesser offense that is necessarily established by establishing the statutory elements of a greater offense constitutes an included offense."  *Welborne*, ¶ 12 (quoting *Rock*, ¶ 16).

¶ 29    Criminal possession of a financial device does not qualify as a lesser included offense of identity theft under either test because criminal possession of a financial device has at least one element not included in identity theft.  Specifically, the offense of criminal possession of a financial device requires proof that the defendant knew, or reasonably should have known, that the financial device was "lost, stolen, or delivered under mistake as to the identity or address of the account holder."  § 18-5-903(1).  The offense of identity theft premised on use of a financial device does not include this element.  *See* § 18-5-902(1).  Hence, proving the elements of identity theft does not necessarily establish the elements of criminal possession of a financial device.

¶ 30    To elaborate, the offense of identity theft premised on the use of another person's financial device requires proof that the defendant knowingly used the device "without permission or lawful

13

authority." *Id.* Proof that the defendant knowingly used the financial device without permission or lawful authority does not necessarily prove that the defendant knew, or should have known, that the device was lost, stolen, or delivered under mistake. For instance, consider the following hypothetical: Person A asks Person B to hold onto their credit card but instructs them not to use it. Person B then uses the card to purchase something without receiving permission from Person A. Person B would know that the card was *not* lost, stolen, or misdelivered; so Person B could not be convicted of criminal possession of a financial device. *See* § 18-5-903(1)(a). But Person B could be guilty of identity theft because they used the credit card without permission or lawful authority. *See* § 18-5-902(1).

¶ 31    In sum, because proof of identity theft does not necessarily establish criminal possession of a financial device, criminal possession is not a lesser included offense under subsection 408(5)(a). *Cf. Kern,* ¶ 35 (holding that, because a person could commit the offense of throwing a missile without also committing the offense of littering, littering was not a lesser included offense); *Page,* ¶ 19 (concluding that establishing the elements of sexual

14

assault by means of penetration necessarily established the elements of unlawful sexual contact because there was no way to commit sexual assault without also committing unlawful sexual contact).

## D. Section 18-1-408(5)(c)

¶ 32 Alternatively, Poot-Baca says the lesser offense was included in the greater under section 18-1-408(5)(c) (subsection 408(5)(c)). Under that provision, an offense is included in another if "[i]t differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission." § 18-1-408(5)(c). Our supreme court has recently explained that an offense is included in another under this provision if it differs from the offense charged *only* in the respect that "(1) a less serious injury or risk of injury, a lesser kind of culpability, or both a less serious injury or risk of injury and a lesser kind of culpability suffice to establish its commission; and (2) no other distinctions exist." *Pellegrin v. People*, 2023 CO 37, ¶ 34. If any other distinctions exist, subsection 408(5)(c) does not apply. *Id.*

¶ 33    Poot-Baca contends that subsection 408(5)(c) applies because the only distinction between the two offenses is that there is a "less serious injury/risk of injury to the same cardholder" in criminal possession of a financial device.  We disagree because other distinctions between the offenses exist.

¶ 34    First, the two offenses punish different conduct.  Criminal possession of a financial device prohibits the *possession* itself, while identity theft prohibits the *use* of the financial device.  *See* §§ 18-5-903(1), 18-5-902(1)(a).  Although use necessarily includes possession, that does not mean the prohibited conduct is the same.  To illustrate, we note that the supreme court in *Pellegrin* compared a stalking statute that prohibited repeatedly "following, approaching, contacting, surveilling, or communicating" to a harassment statute that prohibited only a single improper communication.  *Pellegrin*, ¶ 40.  The supreme court concluded that the statutes "punish different conduct."  *Id.*  In doing so, the supreme court rejected application of the "subset test" to subsection 408(5)(c).  *See id.* at ¶¶ 42-45.

¶ 35    Second, the statutes protect different things.  Criminal possession of a financial device protects only financial devices, *see*

16

§ 18-5-903(1), while identity theft is broader because it also protects personal identifying information and financial identifying information, *see* § 18-5-902(1)(a). Although a financial device is included in both statutes, the difference between the statutes matters for purposes of subsection 408(5)(c). *See Pellegrin,* ¶ 39 (concluding that subsection 408(5)(c) did not apply because the stalking statute protected both a specific person and a member of that person's immediate family, or someone with whom that person has or has had a continuing relationship, while the harassment statute protected only a single specific person).

¶ 36 Accordingly, we conclude that criminal possession of a financial device is not a lesser included offense of identity theft under subsection 408(5)(c). For all the reasons we have discussed, therefore, the district court did not err by failing to merge Poot-Baca's convictions for those two offenses.

## IV. Restitution

¶ 37 Poot-Baca contends the district court erred by ordering him to pay restitution to Discover Card for losses resulting from transactions that he was not convicted of executing. Because

17

sufficient evidence supports the court's finding that he was the proximate cause of those losses, we disagree.

### A.     Standard of Review

¶ 38    We review de novo whether a court has the authority to impose restitution.  *People v. Roddy*, 2021 CO 74, ¶ 23; *see also People v. Moss*, 2022 COA 92, ¶ 8.  Some disagreement exists, however, as to the appropriate standard of review for assessing whether sufficient evidence supports a restitution order.  *See People v. Babcock*, 2023 COA 49, ¶ 17 ("We note, however, that the appropriate standard of review is far from clear.").  Some divisions of this court have applied de novo review, while others have reviewed for an abuse of discretion.  *See Moss*, ¶ 9 (applying de novo review); *People v. Barbre*, 2018 COA 123, ¶ 15 (applying de novo review); *People v. Martinez*, 2022 COA 28, ¶ 14 (applying abuse of discretion review) (*cert. granted* Oct. 24, 2022).

¶ 39    Even when reviewing de novo, however, our review is deferential to the district court's finding that the defendant was the proximate cause of the claimed loss.  Under that standard, an appellate court "review[s] the record de novo to determine whether the evidence was sufficient in both quantity and quality to support

18

a restitution award." *Babcock*, ¶ 18. We evaluate whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, establishes by a preponderance of the evidence that the defendant caused the loss. *Id.*; *see also Barbre*, ¶ 25. "[W]e will not disturb a district court's findings and conclusions if the record supports them, even though reasonable people might arrive at different conclusions based on the same facts." *Babcock*, ¶ 18 (citation omitted). That is, our review is limited to "whether the prosecution presented sufficient evidence to convince a reasonable fact finder by a preponderance of the evidence of the amount of restitution owed." *Id.* (citation omitted). Given the deferential nature of de novo review in this context and because the outcome here would be the same under any standard of review, we apply de novo review as Poot-Baca requests.[2]

## B.    Relevant Facts

¶ 40    Poot-Baca was convicted of robbery for taking Sheppard's purse and bag by force on January 14, 2019. He was convicted of committing identity theft and possession of a financial device based

---

[2] The People decline to take a position on the proper standard of review.

on actions on January 15 involving the Discover Card that had been in her purse. The prosecution sought restitution in the amount of $2,651.90 to reimburse the Crime Victims' Compensation Board and Discover Card. Poot-Baca objected to the $102.40 requested for Discover Card's losses, which represented purchases from various vendors (none of which was Foot Locker).

¶ 41 At the restitution hearing, Poot-Baca argued that the losses incurred by Discover Card were not proximately caused by his conduct because the identity theft and criminal possession of a financial device convictions were based only on evidence that he used the credit card to attempt a purchase at Foot Locker, which was declined. His argument was rooted in defense counsel's request during trial that the prosecutor elect which transaction formed the basis for the identity theft charge, given that the same credit card was affiliated with multiple transactions on the same day. The prosecutor elected to rely on the evidence related to Foot Locker to support the identity theft count. Although neither the jury instructions nor the verdict forms limited any count to the Foot Locker evidence, the prosecutor in closing argument relied on that

evidence to support both the identity theft and the criminal possession of a financial device counts.

¶ 42    The court rejected Poot-Baca's argument and awarded the restitution amount requested by the prosecution.  The court found as follows:

> [B]ut for [Poot-Baca] setting these wheels in motion there wouldn't have been a loss, and there isn't any real significant proof of any intervening cause that would offset that, and so I find that the People have met their burden of proving the restitution that is — is against Mr. Poot-Baca in the amount of two thousand six hundred and fifty-one dollars and ninety cents.  That includes the Victims Comp Fund and the — the amount owed to Discover Card in this case . . . .

### C.    Relevant Law

¶ 43    A person found guilty of criminal conduct must "make full restitution to those harmed by their misconduct." § 18-1.3-601(1)(b), C.R.S. 2023.  Restitution "means any pecuniary loss suffered by a victim . . . proximately caused by an offender's conduct . . . that can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a), C.R.S. 2023.

¶ 44    Proximate cause in the context of restitution is "a cause which in natural and probable sequence produced the claimed loss and

without which the claimed loss would not have been sustained." *Moss*, ¶ 12. "The prosecution must prove by a preponderance of the evidence that the defendant's conduct proximately caused the victim's loss and the amount of that loss." *Babcock*, ¶ 19.

¶ 45 Generally, a defendant may not be ordered to pay restitution for losses unless they stem from the conduct that was the basis of the conviction. *Moss*, ¶ 13. "Consequently, a district court may not award restitution for damages arising from criminal conduct (1) of which the defendant was acquitted; (2) for which the defendant was never criminally charged; or (3) which underlies a dismissed charge." *Id.* (citations omitted).

### D. Application

¶ 46 Poot-Baca argues that he cannot be ordered to pay restitution to Discover Card because Discover Card's losses did not result from his conduct underlying his convictions for identity theft or criminal possession of a financial device. Even if we accept the premise that Discover Card's losses cannot be tied to those convictions, however, we reject Poot-Baca's claim because those losses can be tied to his robbery conviction. Viewing the evidence in the light most favorable to the prosecution, we conclude that it adequately supports the

district court's finding that Poot-Baca's robbery proximately caused $102.40 in losses to Discover Card.

¶ 47    As noted, the jury found that Poot-Baca robbed Sheppard by forcibly taking her purse, which contained her Discover card. The evidence of this robbery permitted the district court to reasonably find that his taking the credit card produced, in a natural and probable sequence, the unauthorized use of the card. This consequence was foreseeable even though the robbery offense itself did not require proof that Poot-Baca used the taken property to another's financial detriment. *See id.* at ¶ 18 (rejecting the defendant's claim that "restitution must be directly related to an *element* of the crimes for which she was convicted," concluding instead that restitution "must be tied to unlawful conduct for which a defendant was convicted").

¶ 48    Moreover, the evidence did not compel the court to find an intervening cause that interfered with the natural and probable sequence of events. *See People v. Clay*, 74 P.3d 473, 475 (Colo. App. 2003) (defining an intervening cause). The evidence permitted a finding that Poot-Baca took the card from Sheppard on January 14, and he possessed the card after the January 15 credit

23

card transactions at issue. His attempted purchase with the card at Foot Locker occurred around 2 p.m. on January 15. All three Discover transactions at issue were made on January 15 before 2:00 p.m. The fact that Poot-Baca possessed the card shortly after those three transactions supported the court's finding that there was not an intervening cause of the losses. That is, the evidence supported the finding that Poot-Baca took the credit card the night of January 14 and still had it around 2:00 p.m. on January 15. Therefore, the evidence was sufficient to show that Poot-Baca's conduct in robbing Sheppard of the credit card was the proximate cause of the unauthorized credit card purchases made within that timeframe. *See People v. Jaeb*, 2018 COA 179, ¶ 50 ("[E]ven if we assume that the trailer was damaged by the police, the damage was the natural and probable consequence of defendant's theft and would not have occurred but for his actions.").

¶ 49     Therefore, we affirm the district court's finding that Poot-Baca was the proximate cause of Discover Card's losses.

## V. Conclusion

¶ 50     The judgment and order are affirmed.

JUDGE GROVE and JUDGE LUM concur.