23CA0250 Peo v Rodriguez 08-14-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0250
Arapahoe County District Court No. 21CR1325
Honorable Joseph Whitfield, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Joshua Rodriguez,

Defendant-Appellant.

---

ORDER VACATED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE FOX
Gomez and Lum, JJ., concur

Prior Opinion Announced January 23, 2025, Vacated in 25SC122

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 14, 2025

---

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Robin Rheiner, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1        This case is before us again after the Colorado Supreme Court

vacated our opinion in *People v. Rodriguez*, (Colo. App. No.

23CA0250, Jan. 23, 2025) (not published pursuant to C.A.R. 35(e))

(*Rodriguez I*), and remanded with directions for us to reconsider

*Rodriguez I* in light of five later announced cases: *Johnson v. People*,

2025 CO 29; *People v. Roberson*, 2025 CO 30; *Babcock v. People*,

2025 CO 26; *Tennyson v. People*, 2025 CO 31; and *Snow v. People*,

2025 CO 32.  *People v. Rodriguez*, (Colo. No. 25SC122, June 30,

2025) (unpublished order).  In *Rodriguez I*, we concluded that the

district court ordered defendant, Joshua Rodriguez, to pay

restitution without authority because it issued its order 315 days

after sentencing without finding good cause to extend the statutory

deadline.  *See* § 18-1.3-603(1)(b), C.R.S. 2021.[1]  Concluding that

these cases support our original disposition, we vacate the

---

[1] At the time of the offense in 2021, district courts had ninety-one
days following the order of conviction to determine a specific
amount of restitution.  § 18-1.3-603(1)(b), C.R.S. 2021.  In 2025,
the General Assembly amended the deadline such that district
courts must determine a specific amount of restitution within sixty-
three days following the later of (1) the prosecution's presentation of
restitution information or (2) the order of conviction.  Ch. 307, sec.
1, § 18-1.3-603(1)(b), 2025 Colo. Sess. Laws 1606.  All citations to
section 18-1.3-603 in this opinion are to the 2021 statute.

restitution order and remand for the district court to correct the mittimus to reflect that Rodriguez owes no restitution.

## I.    Background

¶ 2    Rodriguez was charged with sixteen counts in connection with a police pursuit of a stolen car in Littleton, Colorado. In September 2021, he pleaded guilty to one count of second degree assault with a deadly weapon. § 18-3-203(1)(b), C.R.S. 2024. The plea agreement said restitution was "reserved." In November 2021, at the State's request, the court entered an order obligating Rodriguez to pay restitution, "the specific amount of which shall be determined within 91 days following the order of conviction." On February 3, 2022, the State requested $25,531.76 in restitution.

¶ 3    At a February 18, 2022, sentencing hearing, the court entered a judgment of conviction and said that "[r]estitution is hereby ordered." Defense counsel objected to the requested amount, and the court set a hearing for March 29, 2022. The court did not order restitution at the hearing but noted that it would issue "an order relatively soon" and that it would "be a relatively quick order."

¶ 4    Three months later, the court had not yet ordered restitution. So, on June 30, 2022, Rodriguez requested a ruling. The court did

not respond. On November 16, 2022, Rodriguez again requested a ruling, this time arguing that the court could not impose restitution because the ninety-one-day deadline had lapsed. *See* § 18-1.3-603(1)(b). On December 30, 2022, more than ten months (315 days) after sentencing, the district court issued an order imposing $8,314.80 in restitution. The order did not address Rodriguez's statutory objection to restitution or the reason for the delay.

¶ 5      On appeal in *Rodriguez I*, Rodriguez argued that the district court lacked authority to order restitution because it did so more than ninety-one days after the judgment of conviction without finding good cause to extend the deadline. No. 23CA0250, slip op. at ¶ 8. We agreed that the court lacked authority to impose restitution, so we did not reach Rodriguez's alternative contention that the court erred by imposing restitution for property damage related to a dismissed charge. *Id.* at ¶ 24; *see* § 18-1.3-603(11). We vacated the restitution order and remanded to the district court to amend the mittimus to reflect that Rodriguez owed no restitution.

¶ 6      The State filed a petition for certiorari in April 2025, and our supreme court announced several restitution cases while the petition was pending. On remand, we reconsider *Rodriguez I* based

on those cases. We first consider the State's contention that Rodriguez waived his right to assert subsection (1)(b)'s deadline. We also consider its argument that Rodriguez raised an illegal manner claim, which it asks us to review for harmless error. Because we conclude that the court lacked authority to impose restitution, we do not reach Rodriguez's second contention of error from the original appeal concerning the amount of restitution.

## II. Analysis

### A. Waiver

¶ 7 The State argues that *Babcock*, *Johnson*, and *Roberson* support a conclusion that Rodriguez waived his challenge to the restitution order's timeliness because he did not insist on a final order within the deadline, and he did not raise the deadline "until almost eight months after the restitution hearing." Rodriguez contends that these cases do not support *waiver* because the State argued on appeal that he failed to *preserve* his challenge, and the cases addressing waiver "involved situations where defense counsel did something to waive the statutory deadline." Because the State did not argue waiver in the original appeal, we do not address the merits of its argument here.

### 1. Standard of Review and Applicable Law

¶ 8    "We review de novo whether a claim is waived." *Babcock*, ¶ 28. The "waiver of a statutory right 'must be voluntary, but need not be knowing and intelligent.'" *Id.* at ¶ 29 (citation omitted). Waiver may be explicit, through a party's "express[] abandon[ment of] an existing right or privilege," or implicit, "when a party engages in conduct that manifests an intent to relinquish a right or privilege or acts inconsistently with its assertion." *Id.* (citation omitted).

¶ 9    By statute, virtually all judgments of conviction must address restitution. *See* § 18-1.3-603(1)(a)-(d). Of the four enumerated types of restitution orders, we consider the second, "[a]n order that the defendant is obligated to pay restitution, but that the specific amount of restitution shall be determined within the ninety-one days immediately following the order of conviction, unless good cause is shown for extending the time period by which the restitution amount shall be determined." § 18-1.3-603(1)(b). Our supreme court has explicitly held that district courts lack authority to order restitution "after the ninety-one-day deadline in [section 18-1.3-603(1)(b)] expire[s]" unless "the court *expressly* finds good

5

cause" to extend the deadline "*before* the deadline expires." *People v. Weeks*, 2021 CO 75, ¶¶ 5, 40, 45 (emphases added).

¶ 10    In three of the five companion cases, our supreme court considered whether subsection (1)(b)'s deadline is jurisdictional, such that it cannot be waived, or directory, such that it can. *E.g.*, *Babcock*, ¶¶ 17, 27. The court held that subsection (1)(b) is not jurisdictional, so "its provisions can be waived." *Id.* at ¶ 27. In the first case, affirming a decision from a division of this court, the court held that a defendant waived his right to assert subsection (1)(b)'s deadline. *Id.* at ¶¶ 2, 31. Specifically, Babcock waived the deadline by objecting to the prosecution's proposed restitution amount and requesting a hearing date more than ninety-one days after the judgment of conviction. *Id.* at ¶¶ 3, 30. Rejecting Babcock's argument that *Weeks* controlled, the court noted that "[w]aiver was not before [it] in *Weeks*; neither party raised the issue, and [the court] didn't address it." *Babcock*, ¶ 10.

¶ 11    Next, *Roberson*, ¶ 2, considered whether "accept[ing] . . . a hearing date outside the . . . deadline" amounted to waiver. There, defense counsel requested additional time to review the proposed restitution amount, agreed to a hearing after the statutory deadline,

6

and requested multiple continuances of the hearing. *Id.* at ¶¶ 7-8. On the second day of the hearing, well over a year after sentencing, Roberson objected to the court's authority to impose restitution because the deadline had passed. *Id.* at ¶ 8. On appeal, the State argued that Roberson waived the deadline, a division of this court disagreed, and the supreme court reversed. *Id.* at ¶¶ 9, 17.

¶ 12    As in *Babcock,* the court in *Roberson* distinguished *Weeks,* noting that the State did not argue waiver in *Weeks,* "and Weeks, in fact, asserted his statutory rights before the . . . deadline had lapsed." *Roberson,* ¶ 15 (explaining that, while Weeks first argued that the court lacked authority to order restitution "at a defense-requested hearing ten months after sentencing," he made an earlier objection, well before the deadline, arguing that the issue of restitution could not remain open indefinitely (citing *Weeks,* ¶¶ 12-14)). The court concluded that Roberson's "failure to object to a hearing outside the statutory deadline and subsequent repeated requests for continuances — all without any mention of the . . . deadline despite numerous opportunities to do so" — evidenced waiver. *Id.* at ¶ 17.

¶ 13    Finally, in *Johnson*, ¶ 31, the supreme court concluded that

"Johnson waived his claim that the court lost authority to impose

restitution." It reasoned that Johnson did not raise the deadline

when the district court originally gave him sixty days after the

ninety-one-day deadline to object to restitution, nor did he object

when, on the ninety-first day, the district court ordered restitution

and gave Johnson thirty days to object to the amount and request a

hearing. *Id.* at ¶¶ 8-9, 31. Additionally, Johnson requested a

hearing after the deadline, requested multiple continuances, and

then argued at the hearing that the district court had good cause to

extend the deadline. *Id.* at ¶¶ 10, 31.

¶ 14    A split division of this court had held that the district court

made a valid good cause finding to extend the deadline, but the

majority did not consider waiver. *Id.* at ¶ 15. However, the

concurring judge had written that Johnson "waive[d] . . . any

challenge to restitution on the basis that the prosecution waited

ninety-one days to file its motion."[2] *People v. Johnson*, 2023 COA

---

[2] Johnson also raised a challenge under section 18-1.3-603(2)(a), which involves the prosecution's deadline and is not applicable here. *Johnson v. People*, 2025 CO 29, ¶¶ 14, 19.

43M, ¶ 37 (Welling, J., specially concurring), *aff'd*, 2025 CO 29.  In its petition for certiorari, the State had argued that Johnson waived the statutory deadlines.

## 2.    Application

¶ 15    Here, unlike the cases discussed above, Rodriguez did not request continuances, nor did he request — or accept — a hearing after the deadline.  The restitution hearing occurred two months before the deadline's expiration, and the district court emphasized that it would issue an order shortly thereafter.  Thus, the State argues that Rodriguez waived the statutory deadline by waiting until his second request for a ruling to argue that the court lacked authority to impose restitution because the deadline had passed.  However, unlike *Johnson*, *Babcock*, and *Roberson*, the State did not make a waiver argument on appeal or in its petition for certiorari.

¶ 16    Instead, it argued that Rodriguez did not preserve his argument about the court's deadline because his objection was untimely.  The State did not argue that Rodriguez expressly waived this argument, nor did it argue that he "engage[d] in conduct that manifest[ed] an intent to relinquish a right or privilege or act[ed] inconsistently with its assertion."  *Babcock*, ¶ 29 (quoting *Forgette*

*v. People*, 2023 CO 4, ¶ 28). And the State could have argued waiver before the supreme court announced its recent decisions; in June 2023 (more than a year before the State filed its answer brief in *Rodriguez I*), a division of this court concluded that subsection (1)(b)'s deadline was not jurisdictional and could be waived. *People v. Babcock*, 2023 COA 49, ¶ 11, *aff'd*, 2025 CO 26.

¶ 17 Moreover, in its petition for certiorari, the State noted that all five of the recently decided (then pending) supreme court cases could affect the supreme court's review of *Rodriguez I*. Yet the State's petition did not argue that Rodriguez waived his challenge to the timeliness of the restitution order, nor did it request review of our conclusion that Rodriguez preserved this issue. The issues presented for review included: (1) "[w]hether a preliminary order for a specific amount of restitution, subject to a hearing on the defendant's objection, satisfied section 18-1.3-603(1)(a) . . . , and whether a later reduction of that amount . . . was authorized by section 18-1.3-603(3)(b)"; and (2) "[w]hether any procedural violations in imposing restitution required automatic vacatur of the restitution award."

¶ 18     Under these circumstances, we decline the State's invitation on remand to consider whether Rodriguez waived his right to rely on subsection (1)(b)'s deadline.  We do not interpret the remand order as asking us to consider arguments not raised in the original appeal or in the petition for certiorari.  *See Tennyson*, ¶ 10 n.5 ("We 'decide cases on the grounds raised and considered in the [intermediate appellate court] and included in the question on which we granted certiorari.'" (quoting *Bragdon v. Abbott*, 524 U.S. 624, 638 (1998))) (alteration in original).  And we see no reason to do so when the issue was not fully briefed in the original appeal.  *Cf. Tull v. Gundersons, Inc.*, 709 P.2d 940, 945 & n.5 (Colo. 1985) (addressing an issue not considered on appeal because it was "bound to arise on remand" and "was fully briefed to the court of appeals").

¶ 19     Moreover, in distinguishing *Weeks*, the supreme court emphasized that waiver was not at issue there, just as it was not at issue in *Rodriguez I*.  *See Roberson*, ¶ 15; *Babcock*, ¶ 10.  Nothing in the supreme court's recent cases suggests that we must address an issue not originally before us on appeal.  *See Moody v. People*, 159 P.3d 611, 614 (Colo. 2007) (It is a "basic principle of appellate

11

jurisprudence that arguments not advanced on appeal are generally deemed waived.").  Therefore, because we do not consider waiver, we stand by our decision in *Rodriguez I* that the district court lacked authority to impose restitution because it did so after the deadline without good cause.  *See Weeks*, ¶¶ 40, 45.

### B. The Applicable Remedy and Standard of Reversal

¶ 20  Next, the State argues that, if Rodriguez's challenge to the restitution order's timeliness is not waived, it is an illegal manner claim that we must review for harmless error.  In *Rodriguez I*, the State mentioned illegal sentence and illegal manner claims once, in the context of preservation.  However, in *Rodriguez I* and in its petition for certiorari, the State argued that Rodriguez's restitution challenge is reviewable for harmless or plain error.  Viewing preservation in the most lenient light possible, we conclude that we may reach this issue.

¶ 21  We review the legality of a sentence de novo.  *Snow*, ¶ 23.

¶ 22  The remaining cases for our consideration include *Snow* and *Tennyson*, both of which addressed postconviction challenges to restitution under Crim. P. 35(a).  *Snow*, ¶ 1, considered "whether a Crim. P. 35(a) challenge regarding a post-sentencing order setting

the amount of restitution is cognizable as an illegal sentence claim or an illegal manner claim." The supreme court held that the district court imposed an illegal sentence when it reserved the issue of restitution entirely and thereby failed to enter "one of the four restitution orders authorized by subsection (1)." *Id.* at ¶¶ 22-23. It then concluded that vacatur was the proper remedy but noted that *Weeks* did not control this result. *Id.* at ¶¶ 26-28.

¶ 23    The court explained that "the subsection (1)(b) deadline is inapposite here because the district court never entered a subsection (1)(b) order[;] . . . [it] merely reserved the issue of restitution in its entirety, [which was] not authorized by subsection (1)." *Id.* at ¶ 27. However, the court stood "firmly by . . . *Weeks*," concluding that vacatur was the proper remedy for the illegal sentence. *Id.* at ¶ 4. It explained that vacatur is the only proper remedy when, "on direct appeal, a court concludes that the trial court, after entering a subsection (1)(b) order finding restitution liability at sentencing, fails to comply with the ninety-one-day deadline and thus acts without authority in determining the amount of restitution." *Id.* at ¶ 31. It applied the same rationale to

13

illegal sentence claims as *Weeks* did to subsection (1)(b). *Id.* at ¶¶ 32, 41.

¶ 24 *Tennyson,* ¶ 3, 62, also considered whether a Rule 35(a) claim involving restitution was an illegal sentence claim or an illegal manner claim but held that a challenge "pursuant to subsection (1)(b) is an illegal manner claim." The distinction mattered because Tennyson could have brought an illegal sentence claim at any time, but he could only bring an illegal manner claim "within 120 days after the imposition of his sentence." *Id.* at ¶ 32. The court concluded that his claim was time barred under Rule 35's deadline for illegal manner claims. *Id.* at ¶¶ 31, 62. Therefore, although the district court ordered restitution 126 days after sentencing, the supreme court did not vacate the order. *Id.* at ¶¶ 11, 62.

¶ 25 The State argues that, because Rodriguez's appeal involves a challenge to an untimely order entered under subsection (1)(b), the issue before us is an illegal manner claim. Thus, it contends, *Snow*'s remedy of vacatur for illegal sentences does not apply, and we should review for prejudice. The State notes that the recent restitution cases did not address whether similar illegal manner claims should be reviewed for harmless error, but it urges us to

14

infer such a standard from these cases and others. *See People v. Dominguez*, 2021 COA 76, ¶ 12 (reviewing an illegal manner claim for harmless error) (*cert. granted* Apr. 11, 2022).

¶ 26 We agree that the issue here implicates the principles outlined in *Tennyson* regarding illegal manner claims. But we reject the invitation to review for harmless error, concluding that *Weeks*, *Tennyson*, and *Snow* support vacatur as the proper remedy. *See Doe v. Univ. of Denver*, 2022 COA 57, ¶ 88 ("We are bound by opinions of the Colorado Supreme Court, not opinions of another division of this court."), *aff'd in part and rev'd in part*, 2024 CO 27.

¶ 27 First, while *Snow*, ¶ 31, considered an illegal sentence claim, not an illegal manner claim, it reaffirmed vacatur as the proper remedy under subsection (1)(b) when a district court does not "comply with the ninety-one-day deadline and thus acts without authority in determining the amount of restitution." *See also Weeks*, ¶ 47 (vacating such an order). As the supreme court did in *Weeks*, we concluded in *Rodriguez I* that the district court did not comply with the subsection (1)(b) deadline and lacked authority to impose restitution.

¶ 28    Additionally, *Tennyson* and *Snow* involved postconviction issues, which the court distinguished from direct appeals. *Tennyson*, ¶ 58 (explaining that because *Weeks* involved a direct appeal, "the remedy . . . granted there has no bearing on Tennyson's Crim. P. 35(a) claim"). And the issue before us involves a direct appeal.

¶ 29    Although the State suggests otherwise, *Tennyson* did not leave open the question of whether a timely illegal manner claim under Rule 35 is subject to harmless error review. The court specifically noted that if Tennyson had timely filed his illegal manner claim, "he would have been entitled to vacatur of the post-sentencing order setting the restitution amount, and that, in turn, would have required the district court to amend his mittimus to reflect that no restitution was required." *Id.* at ¶ 59 n.12.

¶ 30    Finally, we reject the State's argument that *Babcock*, *Johnson*, and *Roberson* support reviewing untimely subsection (1)(b) orders for harmless error. True, *Babcock*, ¶ 26, noted that construing subsection (1)(b) as jurisdictional was "antithetical to the statute's purposes" because victims with statutory rights to restitution "could receive no compensation due solely to a trial court's failure

16

to meet the deadline." And *Johnson*, ¶ 24, explained that "interpret[ing] the statute as jurisdictional would mean that a trial court's failure to meet the deadline might render a victim . . . without any means to seek restitution." But this language is not at odds with the notion that vacatur is the proper remedy when a court orders restitution beyond the statutory deadline without making an express good cause finding. *See Weeks*, ¶¶ 45, 47.

¶ 31        As *Snow* explained, *Weeks* determined vacatur was the proper remedy because allowing trial courts to simply "reissu[e] the untimely order setting the restitution amount . . . would have knocked out all the deadline's teeth." *Snow*, ¶ 31 (citing *Weeks*, ¶ 47). The concerns in *Babcock*, *Johnson*, and *Roberson* present different sides of the same issue. While *Weeks* sought to ensure that defendants are not penalized for a *court's* failure to adhere to its deadline, *Babcock*, *Johnson*, and *Roberson* sought to ensure that victims are not penalized for a *defendant's* waiver of the deadline.

¶ 32        *Babcock*, ¶¶ 26-27, 30, for example, was concerned that construing subsection (1)(b) such that it could not be waived would mean that a defendant could, for instance, agree to or ask the court to determine restitution after the deadline and then successfully

17

argue that the court imposed restitution without authority. This concern was not present in *Weeks* because "[w]aiver was not before [the court] in *Weeks*." *Babcock*, ¶ 10. Therefore, the recent cases did not overrule *Week*'s conclusion that vacatur is the proper remedy for untimely subsection (1)(b) orders; they merely clarified that vacatur is improper if a defendant waived the statutory deadline, *see, e.g., id.* at ¶¶ 26-27, or if an illegal manner challenge was untimely, *see Tennyson*, ¶ 62. And the fact that Rodriguez's claim could be construed as an illegal manner claim if it had not been brought on direct appeal does not change the result. *See Tennyson*, ¶ 59 n.12.

¶ 33    Accordingly, we stand by our decision in *Rodriguez I* to vacate the district court's restitution order.

### III.   Disposition

¶ 34    For the reasons set forth above and in *Rodriguez I*, we vacate the order imposing restitution and remand for the district court to correct the mittimus to reflect that Rodriguez owes no restitution.

JUDGE GOMEZ and JUDGE LUM concur.